## ANDERSON v. CARKINS.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 322. Argued May 1, 2, 1890.—Decided May 19, 1890.

In decreeing specific performance of a contract for the conveyance of a tract of land in a suit where the defence was that the contract was against public policy and void under the homestead laws of the United States, a state court necessarily passes upon a federal question, although it may put its decision upon other grounds.

A contract by a homesteader to convey a portion of the tract when he shall acquire title from the United States is against public policy and void; and it cannot be enforced, although a valuable consideration may have passed to the homesteader from the other party.

THE case is stated in the opinion.

*Mr. John A. Casto* (with whom was *Mr. James M. Woolworth* on the brief) cited to the merits: *Mellison* v. *Allen*, 30 Kansas, 382; *Brake* v. *Ballou*, 19 Kansas, 397; *Dawson* v. *Merrille*, 2 Nebraska, 119; *Oaks* v. *Heaton*, 44 Iowa, 116; *Nichols* v. *Council*, 9 S. W. Rep. 305; *Cox* v. *Donnelly*, 34 Arkansas, 762; *Sorrels* v. *Self*, 43 Arkansas, 451; *Sherman* v. *Eakin*, 47 Arkansas, 351; *Marshall* v. *Cowles*, 48 Arkansas, 362; *Coppell* v. *Hall*, 7 Wall. 542; *Marshall* v. *Baltimore & Ohio Railroad*, 16 How. 314; *Scudder* v. *Andrews*, 2 McLean, 464; *Leavitt* v. *Palmer*, 3 N. Y. (3 Comstock) 19; *S. C.* 51 Am. Dec. 333; *Aldrich* v. *Anderson*, 2 Land Dec. 71.

*Mr. A. H. Bowen* (with whom was *Mr. C. Hoeppner* on the brief) for defendant in error cited to the merits: *Smith* v. *Bromley*, 2 Doug. 696 *n*; *Jaques* v. *Golightly*, 2 Wm. Bl. 1073; *Browning* v. *Morris*, 2 Cowp. 790; *Williams* v. *Headly*, 8 East, 378; *Worcester* v. *Eaton*, 11 Mass. 368; *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24; *White* v. *Franklin Bank*, 22 Pick. 181; *Schermerhorn* v. *Tolman*, 14 N. Y. 93; *Blanchard* v. *Jamison*, 14 Nebraska, 244; *McBlair* v. *Gibbes*, 17 How. 232, 237; *Brooks* v. *Martin*, 2 Wall. 70; *Planters' Bank* v. *Union Bank*, 16 Wall. 483; *Wann* v. *Kelly*, 2 McCrary, 628; *Simmons* v. *Yurann*, 11 Nebraska, 516.

MR. JUSTICE BREWER delivered the opinion of the court.

On December 16, 1876, the parties hereto entered into the following contract:

"This agreement made and entered into on this 16th day of December, by and between Joseph Anderson and Hannah Anderson, his wife, of the county of Adams and the State of Nebraska parties of the first part, and Levi Carkins of Adams County, Nebraska, party of the second part, witnesseth:

"That the said parties of the first part have this day sold, for and in consideration of the sum of one hundred dollars, to them in hand paid by the said Levi Carkins, the receipt whereof is hereby acknowledged, the following real estate, to

wit: The south one half of southeast corner of section ten (10), in town eight (8), range ten (10) west in Adams County, Nebraska.

"And the parties of the first part further agree with the party of the second part that they will make and execute to him on or before the 1st day of May, 1881, a good and sufficient warranty deed of said premises, clear of all incumbrance, and for the faithful performance of this contract they hereby bind themselves, their heirs, executors, administrators and assigns.

"In witness whereof they have hereunto set their hands and seals, this 16th day of December, 1876.

(Signed)     "JOSEPH ANDERSON,
"HANNAH M. ANDERSON,
"*Parties of the First Part.*

"LEVI CARKINS,
"*Party of the Second Part.*

"In presence of L. P. HAWLEY."

In October, 1885, the defendant in error commenced his action in the District Court of Adams County, Nebraska, for a specific performance of this contract. The plaintiffs in error answered, pleading distinctly that the contract was against public policy and void, for the reason that at the time of its execution the land belonged to the general government; that it was made in contemplation of Joseph Anderson's taking the land as a homestead; that on the 7th day of March, 1877, he did enter the land as a homestead; and that he continued to reside upon and cultivate it until the 31st day of March, 1884, at which time he made final proof under the homestead law, and thus only obtained title. The case, after trial in the District Court, passed to the Supreme Court of the State, by which a final decree was entered for a specific performance. To reverse such decree this proceeding in error has been brought. Two questions are presented — one of jurisdiction, the other of error.

First, with respect to jurisdiction: It will be observed that the contract is *prima facie* good. The land is described, the

consideration stated and its receipt acknowledged, a sale af-
firmed, an agreement to convey recited, and the time for the
conveyance specifically named.   To a bill for the specific per-
formance of this contract the defendants answered that the
contract was void under the homestead laws of the United
States.   Notwithstanding this defence, so expressly stated, a
decree for specific performance was entered against them.
Obviously, this could not be so entered without adjudging
such defence insufficient, and denying to them the protection
claimed under the homestead laws.   It is true that the Su-
preme Court of Nebraska, in its opinion, relied principally on
two sections of the statutes of Nebraska; but it also, and as
plainly, ruled that the defence that the contract was against
public policy and void was not sustainable, and that the home-
stead laws carry with them no protection against such a con-
tract.   If under their provisions such a contract is void, then
obviously no state statute can vitalize the contract, or deprive
a party thereto of the protection afforded by the federal
statutes.   Inasmuch, therefore, as no decree could pass against
the defendants without denying the protection asserted by
them under the homestead laws, and as the Supreme Court of
Nebraska expressly declared that this invalidity under the
homestead laws was not sustainable, it follows that the case
is one in which a right was specifically set up and claimed
under the statutes of the United States, and the decision and
judgment of the state court were against that right.   Hence
the jurisdiction of this court cannot be doubted.   *Murdock* v.
*Memphis*, 20 Wall. 590.   It is immaterial that the state court
considered the case to be within the provisions of certain state
statutes.   The grasp of the federal statute must first be re-
leased.   The construction and scope of that are federal ques-
tions, in respect to which the party who claims under such
statute, and whose claim is denied, has a right to invoke the
judgment of this court.

Passing now to the question of error : It appears that prior
to the date of the contract, Carkins had been in possession of
the whole quarter section; that he had held it as a timber
claim from 1873 to the time of the contract; that he had

broken and cultivated forty acres, and planted twenty acres of timber; that the improvements he had thus made were of the value of one thousand dollars; that Anderson was unable to pay cash for these improvements, and so the arrangement was made by which Carkins relinquished his possession to Anderson, and the latter was to enter into possession, to acquire title under the homestead act, and to convey one-half the land in payment for these improvements. The consideration was ample, and the only question is as to the validity of the contract to convey. The theory of the homestead law is, that the homestead shall be for the exclusive benefit of the homesteader. Section 2290 of the Revised Statutes provides that a person applying for the entry of a homestead claim shall make affidavit that, among other things, " such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person." And section 2291, which prescribes the time and manner of final proof, requires that the applicant make " affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight," which section provides for alienation for " church, cemetery, or school purposes, or for the right of way of railroads." The law contemplates five years' continuous occupation by the homesteader, with no alienation except for the named purposes. It is true that the sections contain no express prohibition of alienation, and no forfeiture in case of alienation; yet, under them the homestead right cannot be perfected in case of alienation, or contract for alienation, without perjury by the homesteader. Section 2304 makes provisions for homesteading by soldiers and officers who served in the army of the United States during the recent war; but that section makes no substantial change, except in respect to the time of occupation. Under this section Anderson perfected his homestead right; but the question of the length of occupation required to perfect such right in no manner affects the controversy. The same affidavits in respect to alienation are required from federal soldiers as in other cases of homesteads.

This precise question was before the Supreme Court of Kansas, when the writer of this opinion was a member of that court; and speaking for that court he thus stated the arguments and conclusions : " Now, it is argued on the one hand that it is a matter of course for a court of equity to decree a specific performance of a contract for the conveyance of real estate, except in cases where it is shown to be unjust and inequitable to do so, *Waynick* v. *Richmond*, 11 Kansas, 488 ; that there is no express prohibition on alienation by a homesteader, or a forfeiture for such alienation ; that the only thing which stands in the way of such an alienation is the perjury imposed upon the homesteader ; that no man should be permitted to plead his own wrong in avoidance of his contract ; that in this case there was no direct alienation, but only a contract to alienate in the future ; that whatever of wrong the homesteader might be guilty of, the government alone could take advantage of, while he himself was estopped to plead it ; and further, that the homestead is for the benefit of the homesteader, and that he should be permitted, by contract or otherwise, to make all the profit he can out of it. On the other hand, it is contended that the homestead is a gift from the government to the homesteader, conditioned upon his occupation for five years, and upon his making no disposition or alienation during such term ; that the affidavit of non-alienation is as clear an expression of the legislative intent as a direct prohibition ; that the whole policy of government in this respect would be thwarted if the homesteader were permitted to alienate prior to the expiration of the five years ; that a successful alienation could be accomplished only by perjury, and an attempted alienation would only offer a constant inducement to the homesteader to abandon his occupation, and thus deprive the purchaser of any possibility of acquiring title to the land ; that a contract whose consummation necessarily rests on perjury is illegal; that both purchaser and vendor are parties to the wrong, and that courts refuse to enforce such a contract, not from any regard to the vendor, but from motives of public policy ; and finally, that courts of equity have always exercised a discretion in enforcing the

specific performance of contracts to convey, and that it would be strange indeed if a court of equity lent its aid to enforce the performance of a contract founded upon perjury and entered into in defiance of a clearly expressed will of the government. We think the latter reasoning correct, and that, whether the contract be absolutely void or not, it is so clearly against the will and policy of the government, and so necessarily resting upon perjury, that a court of equity will have nothing to do with it." *Mellison* v. *Allen*, 30 Kansas, 382, 384.

Similar views were expressed by the Supreme Court of Nebraska, in the case of *Dawson* v. *Merrille*, 2 Neb. 119, in which it was held that "the policy of the act of Congress granting homesteads on the public lands, as disclosed by its requirement of affidavit and other provisions, is adverse to the right of the party availing himself of it to convey, or agree to convey, the land, before he receives the patent therefor," and that "the court will not lend its aid to the enforcement of a contract which is against public policy." And the judgment of the trial court, denying specific performance of a contract for the sale of lands, made by the homesteader before he had acquired the legal title to the premises, was affirmed. See also *Oaks* v. *Heaton*, 44 Iowa, 116; *Nichols* v. *Council*, decided by the Supreme Court of Arkansas, October 20, 1888, 9 S. W. Rep. 305. This very contract was before the Department of the Interior, and its invalidity adjudged by the Secretary, in the case of *Aldrich* v. *Anderson*, 2 Land Dec. 71.

There can be no question that this contract contemplated perjury on the part of Anderson, and was designed to thwart the policy of the government in the homestead laws, to secure for the benefit of the homesteader the exclusive benefit of his homestead right. Such a contract is against public policy, and will not be enforced in a court of equity. Such being the scope and purpose of the federal statutes, it is not within the power of a State directly or indirectly, to nullify or set them at naught. Suppose the State of Nebraska had passed an act, declaring that, notwithstanding the provisions of the federal statute, a homesteader might, before his homestead right was

perfected, make a contract to convey, could it be doubted that such an act would be void, as in conflict with paramount provisions of the federal statute? Can the policy of Congress, with respect to the disposition of public lands, be thwarted by any State? The question suggests its own answer. The law of Congress is paramount; it cannot be nullified by direct act of any State, nor the scope and effect of its provisions set at naught indirectly. But we do not think that the sections of the Nebraska statutes, cited by the Supreme Court, were intended to nullify the provisions of the acts of Congress, or have any such effect. Those sections, Nos. 1 and 2, Compiled Statutes of Nebraska, c. 38, 376, read: "All contracts, promises, assumpsits, or undertakings, either written or verbal, which shall be made hereafter in good faith and without fraud, collusion, or circumvention, for sale, purchase, or payment of improvements made on the lands owned by the government of the United States, shall be deemed valid in law or equity, and may be sued for and recovered, as in other contracts." "All deeds of quitclaim or other conveyance of all improvements made upon public lands, shall be as binding and as effectual in law and equity between the parties for conveying of the title of the grantor in and to the same, as in cases when the grantor has the fee simple to the premises." But these refer simply to contracts for the sale and conveyances of improvements upon public lands. They are in terms limited to the matter of improvements, and do not touch in any way the land itself, whether in respect to conveyance or contract to convey. They may, if valid, establish the sufficiency of the consideration paid by Carkins, but they do not affect at all the question of the validity of Anderson's contract to sell the land. Suppose Carkins' transfer of possession and improvements on the land is, as affirmed under these sections, a good consideration, it is no better consideration than so much money; and Carkins' right to compel a conveyance by Anderson would have been no weaker if he had paid him a thousand dollars in money, than it is now when he simply transfers to him improvements on the land of the value of one thousand dollars.

We may agree with the Supreme Court of Nebraska, that the consideration passing from Carkins to Anderson was a good and valuable one; and yet that brings us no nearer the question of the validity of Anderson's contract to convey. The fact that Anderson has received full payment for the land only makes stronger the fact that perjury on his part was essential to his obtaining the title, for clearly it was not then to be obtained for him but for Carkins; and does not in the least militate against the public policy disclosed in the federal statutes, that the acquisition of title must be for the exclusive benefit of the homesteader. It may be that Carkins can recover from Anderson the value of these improvements, on the ground that Anderson has received that for which he has paid nothing; for in such an action Carkins will not be seeking to enforce an illegal contract. To that effect are the cases of *Simmons* v. *Yurann*, 11 Nebraska, 516, 518; *Bateman* v. *Robinson*, 12 Nebraska, 509, 511; but that is very different from the enforcement of a contract which is illegal, because against public policy. The Supreme Court of Nebraska, recognizing the general rule as to the invalidity of contracts against public policy, seemed to think that the parties were not *in pari delicto;* but we are unable to see any distinction in moral status between the man who contracts for the perjury of another and the one who contracts to commit such perjury. The fact that the former party may have parted with money or valuable property does not change the quality of his action, or give him higher claim to the consideration of a court of equity. So it results that the federal question in this case was not rightly decided by the state court; and no other question appears, which, rightly decided, upholds its decree. The case, therefore, must be

*Reversed, and remanded to the Supreme Court of the State of Nebraska for further proceedings in accordance with this opinion; and it is so ordered.*