# WoodstockIron Co. v. Strickland, *et al.*

*Bill for Injunction and to Declare Resulting Trust.*

1. *Public land; sale of his interest in by entry-man commuted by purchaser to cash entry in the name of the entry-man violative of public policy.*—If a person enters public land under the homestead laws of the United States, and afterwards sells said land and puts the purchaser in possession; and if the purchaser for his own benefit proceeds to have said homestead commuted to a cash entry and to have a patent to issue therefor—all in the name and with the consent of the entry-man— the transaction is violative of the public policy of the United States in respect of government lands, in the absence of an act of congress authorizing it.

2. *Act of congress of June 15, 1880, when not applicable to entry-man and purchaser from him.*—The Act of Congress of June 15, 1880, providing that persons who have entered lands and persons to whom they have attempted to transfer their rights, may entitle themselves to said lands by paying the government price, has no application to a case where the entry was made, or to a case where the attempted transfer was made after the date of the act—such attempted transfers are against public policy and should not be enforced by the courts.

APPEAL from the Chancery Court of Calhoun.
Heard before the Hon. J. R. DOWDELL,

[Woodstock Iron Co. v. Strickland *et al.*]

The facts are fully stated in the opinion.

J. B. KNOX, for appellant.—(1). A party who, purchases land and takes the title in the name of another that other holds in equity as the trustee of the person paying the purchase money; and this applies to purchasers from the United States.—*Irvine v. Marshall*, 2 Howard 292; *Silver v. Ladd*, 7 Wall. 219; *Foster v. Trustees*, 3 Ala. 302; *Caple v. McCullum*, 27 Ala. 461; *Robinson v. Robinson*, 44 Ala. 227; *Glen v. Glen*, 47 Ala. 204; *Fideller v. Norton*, 30 N. W. 128; *Mulloy v. Cooke*, 101 Ala. 178. (2). Unless forbidden by law contracts made by actual settlers on public lands concerning the possessory rights, and concerning the title to be acquired in future from the United States, are valid as between the parties to the contract although there be at the time no Act of Congress by which the title may be acquired. *Lamb v. Davenport*, 18 Wall. 307; *McKennon v. Finn*, 38 Pac. Rep. 382.

J. J. WILLETT and S. D. G. BROTHERS, *contra.*—The Act of Congress of June 15, 1880, was for the benefit of persons who had previously entered land of the United States under the homestead laws, and of those to whom the right of those having so entered land for homestead had been previously attempted to be transferred by *bona fide* instrument in writing. Neither of these classes includes, nor does the policy of the law embrace a person to whom the entry-man may have made a transfer subsequent to the act.—*Dewherst v. Wright*, 10 So. Rep. 682; *Mulloy v. Cooke*, 101 Ala. 179; *McCrillis v. Copp*, 12 So. Rep. 643; *Anderson v. Carkins*, 135 U. S. 483; *Kellom v. Easley*, 14 Wall. 279; *McTyer v. McDowell*, 36 Ala. 39; *Johnston v. Collins*, 12 Ala. 322; Thompson on Homesteads, Sec. 165.

McCLELLAN, C. J.—This bill is filed by the Woodstock Iron Co. against Stickland and others. It avers that on April 20, 1880, Strickland entered a certain parcel of public land under the homestead laws of the United States, "that on February 9, 1881, Strickland sold and conveyed to complainant for a valuable con-

sideration, by an instrument in writing, *bona fide,* the said parcel of land, for, to-wit, twenty dollars," which was paid to Strickland; and that complainant thereupon entered into possession of said land and has since continued in possession, etc., etc.; that at the time of said purchase, complainant made application in the name of said Strickland to the United States Land Office at Montgomery to have said homestead entry commuted under the act of Congress of June 15th, 1880, to a cash entry, which application was allowed, and the complainant paid the government the cash price, to-wit, one hundred dollars; and that afterwards on August 13, 1882, the patent issued therefor in the name of said Strickland, all which was done by and with Strickland's knowledge and consent. It is further alleged that in 1888 Strickland attempted to sell and convey said land to the respondent Beal on a recited valuable consideration, that Beal had notice of complainant's claim when he purchased from Strickland, complainant being in the adverse possession of the land at the time; and that the said Beal is now prosecuting two suits in ejectment against complainant for the land, one in his own name and the other in the name of said Strickland. The prayer is for injunction restraining the actions at law, and that upon final hearing a decree be passed perpetuating the injunction, declaring a resulting trust in said lands in favor of complainant, and divesting the title thereto out of the said Strickland and Beal, and investing it in the complainant, etc., etc.

At the hearing on the merits the chancellor denied the relief prayed and dismissed the bill, not for the want of proof to support the averments of the bill, but for want of equity in those averments; and from that decree the present appeal is prosecuted.

The chancellor proceeded on the theory that to declare and enforce the alleged trust resulting from the payment to the government for the land by the complainant and its conveyance by the government to Strickland would be violative of the public policy of the United States in respect of government lands; and confessedly this is true unless the case is brought within the 2nd section of the act of Congress of June 15, 1880, which is as

follows: "That persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads, may have been attempted to be transferred by *bona fide* instrument in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the government upon said lands shall be taken as part payment of said price." It is clear, of course, upon this statute that only entries made before its passage are within its provisions. The entry here involved was made a few months before the enactment of the statute—in April, 1880. It is we think equally clear upon the words of the enactment that the transfer by the entryman to a third person must also have occurred before the adoption of the statute to entitle such assignee to the land upon the payment of the prescribed price. The right is given only to entrymen or to persons to whom their interests *may have been* attempted to be transferred—not to persons to whom such right *may be* transferred in the future, but to those who in the past have received such transfers. The words used are just as restrictive to transfers already attempted to be consummated as are the words "who have heretofore entered lands" etc. employed with reference to the right conferred upon the entryman himself; and if anything beyond the letter of the act were needed to enforce this interpretation it is found in the other provisions of the statute, all of which deal with the past or with existing conditions, not with the future or with conditions that might thereafter arise. As said by the Supreme Court of Florida: "The purpose of the act of Congress was for the relief of persons who had previously entered for homesteads, and also the relief of persons to whom the right of those who have so entered lands for homesteads had been previously attempted to be transferred by *bona fide* instrument in writing. The policy of the act was to permit these two classes of persons to purchase for cash, or make a cash entry of the lands upon the terms stated in the act, and thus save them from loss consequent upon failure to comply with the ordinary statutory require-

ments, as to residence or occupation and improvement in the case of homestead entries. Neither of these classes includes nor does the policy of the act embrace, a person to whom the person making the entry may have made a transfer, or a *bona fide* attempt to transfer, subsequent to the act."—*Dewhurst v . Wright,* 29 Fla. 223, s. c. 10 So. Rep. 682. This case was followed and the foregoing language was quoted and adopted in the later case of *McGrillis v. Capp,* 12 So. Rep. (Fla.) 643, s. c. 31 Fla. 100, where many authorities, including *Anderson v. Carkins,* 135 U. S. 483, are cited.

There is no decision of this court directly upon the points; but in *Mulloy v. Cook,* 101 Ala. 178, it is held that a transaction of this sort to be enforceable must be brought within the act quoted above, and *Dewhurst v. Wright, supra,* is there cited approvingly. The conclusion we reached in that case that the trust could not be declared and enforced was rested on the ground that the attempted transfer was not in writing. The fact that we did not put it on the further ground that the transfer had been attempted to be made since the act of 1880, as we might have done, is not to be taken as tending to show that we then were of opinion that such a transfer was within the statute; for it was not necessary to consider that question, and it was not considered. Considering it now, we are, as indicated above, clear to the conclusion that persons to whom the right of the entryman has been attempted to be transferred since the enactment of the statute—June 15, 1880—are not within its provisions, that such attempted transfers are against public policy and should not be enforced by the courts. The attempted transfer relied on in this case was subsequent to the statute. The decree of the chancery court must therefore be affirmed.

Affirmed.