BENSON v. FILES.

Opinion delivered May 10, 1902.

ESTOPPEL OF VENDEE TO DISPUTE VENDOR'S TITLE—EXCEPTION.—To the general rule that a vendee receiving possession under his contract cannot deny his vendor's title so long as he remains in possession, there is an exception where the vendee subsequently acquired title by donation from the state. *Shorman* v. *Eakin,* 47 Ark. 351, followed.

Appeal from Ashley Chancery Court.

MARCUS L. HAWKINS, Chancellor.

Reversed.

STATEMENT BY THE COURT.

About the year 1877, A. W. Files was or claimed to be the owner of a tract of land in Ashley county, containing 160 acres. He contracted to sell the lands to one Coats on credit. This land seems to have been also claimed by the state as land which had been forfeited for nonpayment of taxes, and before Coats paid for the land a third party, Joe Benson, in 1888 applied to the commissioner of state lands for a donation of the land, and received a certificate of donation. Afterwards he undertook to exercise some acts of ownership over the land, and thereupon Coats procured his arrest upon a warrant issued by a justice of the peace for trespass upon land. Benson was tried and convicted, and fined $50. He appealed to the circuit court. While the appeal was pending in the circuit court, the parties, Files, Coats and Benson, agreed upon a compromise of their respective claims, and the criminal prosecution against Benson was dismissed.

The compromise provided that Benson should let Coats have 10 acres of land upon which his dwelling house stood, and that he should purchase the interest of Files in the remainder, and pay him $400 therefor. In pursuance of this compromise, Files con-

veyed the 160 acres to Benson, and Benson conveyed 10 acres thereof to Coats. Benson also executed four several promissory notes to Files for the sum of $100 each, due in one, two, three and four years, respectively, and gave mortgage on land to secure the notes. It was also agreed between Files and Benson that Benson should make the improvements and the proof required by the law to obtain a donation deed from the state, and in that way remove any cloud upon the title arising from the claim of the state.

Benson made the improvements and the proof, and obtained a donation deed from the state in that way. He also paid $25 on the notes which he had executed to Files, but made no other payment.

Files brought this action to recover the balance due on the notes and to foreclose his mortgage.

The defendant for answer alleged that Files was never at any time the owner of the land; that the note and mortgage were without consideration and void. He further alleged that, since the execution of the note and mortgage, he had acquired the land by donation deed from the state, and that by the terms of the statute the land is not liable for debts contracted prior to execution of the deed, and that the land is for this reason not liable for the claim of plaintiff.

On the hearing, the chancellor found in favor of plaintiff, gave judgment for the amount of the notes and for the foreclosure of the mortgage. Defendant appealed.

*Robert E. Craig, Pugh & Wiley,* for appellant.

A donation entry is similar to that of homestead. 47 Ark. 350. Contracts cannot invest rights contrary to law or public policy. 2 Pars. Cont. (5th Ed.) 799; 15 Fed. 707; 1 Dill. 213; 37 Ark. 304; *ib.* 555. It was necessary for Eakin to have surrendered possession in order to question the title of Burke. 34 Ark. 762; 43 Ark. 451; 9 Minn. 252; 19 Wall. 646. The alienation of land by donee before his deed is issued is prohibited. 135 U. S. 483; Sand. & H. Dig., §§ 4594, 4571, 4573, 4579, 4583, 4589.

*A. W. Files pro se.*

Appellee's title is void. 29 Ark. 307. After one has acquired rights he may abandon or mortgage them. 39 Ark. 571; 31 Ark. 203; 56 S. W. 1062. An intention only to build a house and

occupy land does not make a homestead. 31 Ark. 466. Compromises are favored. 56 S. W. 447. The burden is upon the party asserting homestead rights to prove that the premises were a homestead. 34 Ark. 55. The wife has no interest in the homestead during the lifetime of the husband. 37 Ark. 298. The curative act of April 13, 1893, made the mortgage void. 59 S. W. 40; 62 Ark. 160; *id.* 320; *id.* 338; *id.* 398. Appellee's title cannot be disputed by Benson. 47 Ark. 350.

RIDDICK, J., (after stating the facts.) This is a suit in equity to foreclose a mortgage. The defense set up is that at the time the mortgage was executed the land was owned by neither plaintiff nor defendant, but was the property of the state, and that since the execution of the mortgage the land has been "donated" by the state to the defendant for the purpose of a homestead, and that under the law the donated land is not liable for the previous debts of the grantee in the state's deed.

The contention of the plaintiff on this point is that the defendant is bound by his compromise; that, having purchased the land from plaintiff and acquired possession in that way, defendant cannot, so long as he retains such possession, deny the title of plaintiff. It is no doubt the general rule that the vendee cannot deny the title of the vendor without first restoring him to possession. But there are exceptions to this rule, and we are of the opinion that this case falls within one of the exceptions. The statute under which lands of the state are donated to citizens of the state requires that the applicant shall make an affidavit "that the land applied for is for the purpose of actual settlement, occupancy and cultivation by the applicant for his or her own exclusive benefit, and not directly or indirectly for the benefit or use of any other person or persons whomsoever." Sand. & H. Dig., § 4573. It further provides that "no donation shall be liable for any debt contracted by the donee prior to the execution of the deed therefor." Sand. & H. Dig., § 4594.

Under this statute the mortgage to Files, being executed by Benson prior to the execution of the state's deed to him, did not bind the interest in the land he acquired from the state, and he is not estopped from setting up this title against the claim of Files; for, if the grantee in the state's donation deed was not permitted to set up his title acquired from the state against such demands, the policy of the state, which is to secure a home to the state's grantee,

and to protect it against his debts contracted prior to the execution of the deed from the state, would be defeated. It would be contrary to public policy to forbid such a defense in a case of this kind. The reason for this rule of public policy is very fully discussed by this court in the case of *Shorman* v. *Eakin,* 47 Ark. 35, to which case we refer for a more elaborate statement of the principles controlling this decision. See, also, *Sorrels* v. *Self,* 43 Ark. 451; *Anderson* v. *Carkins,* 135 U. S. 483.

Having reached the conclusion that Benson is not estopped from disputing the title of Files in this case, it follows that the decision of the chancellor cannot be sustained, for there is nothing in the record to show that Files had any title. It is true that he stated in his deposition that he was the owner of the land, but this was objected to by the other party, and, being only an opinion, was clearly incompetent, as title to land cannot be established in that way. If Files, and not the state, was the owner of the land at the time the state conveyed it to Benson, then, of course, the donation deed, being of no effect, would be no defense to the action of Files, more than the deed from any other person who had no title. We know, of course, that under some circumstances it might, in connection with the statute of limitations and adverse possession, be used to support title, but no question of that kind is presented here.

But, as before stated, Files introduced no evidence of title. He relied on his note and mortgage, and the fact that Benson had compromised with him and purchased the land from him before getting the donation deed from the state. For these reasons, it seems, he did not fully develop his case. If we should direct a final decree on the record as it stands here, it would quite likely result in injustice, as it seems that the facts of the case are not fully presented. We have therefore concluded to reverse and remand the case for further proceedings, and with leave for either party to amend his pleadings and take further evidence. It is so ordered.