CALL et al. v. LOS ANGELES–PACIFIC CO. et al.

(Circuit Court, S. D. California, S. D. July 1, 1908.)

PUBLIC LANDS—DEED EXECUTED BY ALIEN OCCUPANT—VALIDITY.

One M., an alien, who had not declared his intention of becoming a citizen of the United States, but who was an occupant of a tract of public land, executed a deed, by which he purported to convey to defendant railroad company a strip for right of way over such land. The land was at that time within the limits of a railroad grant and had been reserved from entry or sale. Subsequently the grant was forfeited and the land restored to the public domain, and M., who had in the meantime declared his intention to become a citizen, made a homestead entry thereof and later received a patent under which complainants acquired title. *Held*, that the right of way deed was a nullity both because M. was an alien, who could not under the policy of the land laws acquire any right in the land, and because it was at the time re-

served and not subject to disposition thereunder, and that, being void as against public policy. the subsequent title acquired by him did not relate back to give it validity.

Oscar A. Trippett, H. M. Barstow, and Joseph H. Call, for complainants.

Wm. Singer, Jr., Guy Shoup, and John D. Pope, for defendants.

ROSS, Circuit Judge. By their amended bill of complaint, the complainants allege: That they are, and were at the time of the commencement of this suit, the owners as joint tenants in fee, and in actual possession of that certain land situated in Los Angeles county, Cal., known as lots 3, 4, 5, and 6, of section 31, township 1 south, range 16 west, of the San Bernardino base and meridian according to the United States survey thereof, and that the said land is also described as follows: A tract of land of 141 acres, more or less, bounded on the south by the Pacific Ocean in the Bay of Santa Monica, for a distance of one-half mile, and on the west by a tract of land heretofore and during the year 1893 in possession of and claimed under a settlement right of one F. M. Valenzuela. That the said land was, on the 5th day of August, 1896, surveyed by the United States, and the township plats of such survey were on that day approved by the Surveyor General of the United States for the state of California, and duly filed in the local land office of the United States, prior to which 5th day of August, 1896, it was unsurveyed land of the United States. The amended bill alleges: That prior to the year 1893 one Juan Jose de Pena and Maria Valenzuela de Pena, his wife, had unlawfully entered upon the said land, the same then being reserved land of the United States not subject to settlement or entry; that the said Pena and wife had unlawfully erected a cabin on the land, and resided therein during the year 1893 with one Joseph Moynier; that Pena was the head of the family and the husband of the said Maria Valenzuela de Pena; that in the year 1893 neither Pena, his wife, nor the said Moynier was a citizen of the United States, nor had either of them declared his or her intention to become such; that they then were aliens and citizens of France; and that after the said alleged settlement on the said land, and prior to March, 1893, the said Juan Jose de Pena was convicted of a felony in the superior court of the county of Los Angeles, state of California, and during that year was serving a term in the penitentiary of the state of California.

The amended bill then alleges: That by an act of Congress approved July 27, 1866 (14 Stat. 292, c. 278), the Atlantic & Pacific Railroad Company was incorporated and authorized to construct a line of railroad and telegraph from Springfield, in the state of Missouri, to the Pacific Ocean, and to aid in the construction of such road there was granted to the company a large amount of land along said line; that, in pursuance of that act, the said Atlantic & Pacific Railroad Company did, in the year 1872, file in the office of the Secretary of the Interior its map designating its line of railroad and definitely fixing the same from Springfield to the Pacific Ocean at the town of Ventura; that the alleged land of the complainants fell within the indemnity or 30-mile limits of that railroad grant; that by

section 23 of the act of Congress approved March, 1871 (16 Stat. 573, 579, c. 122), the Southern Pacific Railroad Company was authorized to construct a line of railroad from the Tehachepi Pass, via Los Angeles, to the Colorado river at Ft. Yuma, and to aid in the construction of that road a similar grant of lands was made to the Southern Pacific Railroad Company as was made to the said Atlantic & Pacific Railroad Company by the aforesaid act of July 27, 1866; that in the year 1871 the said Southern Pacific Railroad Company filed its map of general route, and in the year 1873 its map of definite location of said railroad from Tehachepi Pass, via Los Angeles, to the Colorado river, and thereafter constructed the said railroad in all respects as required by law; that the said alleged lands of the complainants fell within the granted or 20-mile limits of the said grant to the Southern Pacific Railroad Company; that on April 3, 1871, the Commissioner of the General Land Office, by an official order duly made, withdrew and reserved from settlement, from pre-emption, and from homestead entry, all of the lands designated by odd numbers falling within the 20-mile limits of the said grant to the Southern Pacific Railroad Company between the Tehachepi Pass and the Colorado river, including in such reservation and withdrawal the said alleged lands of the complainants; that on the 22d day of April, 1872, by another order duly made, the Commissioner of the General Land Office withdrew and reserved from settlement, from pre-emption, and from homestead entry, all of the sections of land designated by odd numbers within 30 miles of the line of route of the said Atlantic & Pacific Railroad Company within the state of California, including in such withdrawal and reservation the said alleged lands of the complainants; that the said Atlantic & Pacific Railroad Company failed to construct any part of its road in the state of California, as provided for by the aforesaid act of July 27, 1866, or at all; that by an act of Congress approved July 6, 1886, the grant so made to that company, including both primary and indemnity lands, was forfeited to the United States and retaken because of the company's breach of the conditions of the grant; that on the forfeiture of the said grant to the said Atlantic & Pacific Railroad Company by the said act of July 6, 1886, a controversy arose between the Southern Pacific Railroad Company and the United States as to the title to the lands embraced within the overlap of the grant of the said Southern Pacific Railroad Company and the grant of the said Atlantic & Pacific Railroad Company so forfeited to the United States in 1886; that on the 23d day of June, 1888, the Secretary of the Interior of the United States, having under consideration the adjustment of the land grants of said Atlantic & Pacific and Southern Pacific Railroad Companies, by an official letter and decision duly made, ordered that all of the lands within the granted limits of the grant made to the said Southern Pacific Railroad Company by the act of March 3, 1871, situated also within the indemnity limits of the grant to the said Atlantic & Pacific Railroad Company of July 27, 1866, should continue and remain in reservation pending adjudication by the courts, or until such time as the Interior Department might deem it proper to remove the reservation; that the said order of the said Secretary of the Interior included within the lands so reserved the

said alleged lands of the complainants; that on the 18th day of October, 1897, in a suit pending in the Supreme Court of the United States between the United States and the Southern Pacific Railroad Company, it was finally adjudged by that court that the said Southern Pacific Railroad Company did not and could not acquire under its said grant of March 3, 1871, either as granted or as indemnity, any of the lands falling within the 30-mile limits of the grant made to the said Atlantic & Pacific Railroad Company by the act of July 27, 1866; that all of the said lands in such conflict were owned by the United States; that the said forfeiture did not in any way inure to the benefit of the said Southern Pacific Railroad Company; and that on the 13th day of April, 1898, the Commissioner of the General Land Office, by an official letter and decision duly made, ordered that all of the lands within the conflicting limits of the said grants to the said Southern Pacific Railroad Company and said Atlantic & Pacific Railroad Company be restored to settlement and entry under the homestead and pre-emption laws, which order was made in view of the said decision of the Supreme Court of the United States and included in said order of restoration the said alleged lands of the complainants.

The amended bill further alleges, upon the complainants' information and belief: That on March 27, 1893, Maria Valenzuela de Pena, wife of the said Juan Jose de Pena, and Joseph Moynier, duly made and executed to the defendant Southern Pacific Railroad Company a deed, which was duly acknowledged and thereafter duly recorded in the records of Los Angeles county, Cal., on the 11th day of April, 1893, purporting to convey to said Southern Pacific Railroad Company a strip of land 100 feet wide, and extending for a distance of one-half mile along the northern shore of the said Pacific Ocean, through the said alleged lands of the complainants, a copy of which deed is annexed to the original bill; that at the time that instrument was so executed the land therein described was reserved land of the United States, not subject to homestead or pre-emption entry or settlement; that at that time, and for many years thereafter, the said Joseph Moynier was an alien, to wit, a citizen of France, and had not declared his intention to become a citizen of the United States; that he was not then, nor was he for many years thereafter, entitled to make any settlement or entry under the homestead or pre-emption laws upon any land of any character, and especially was not authorized to settle upon or enter upon any reserved land of the United States; that the said Juan Jose de Pena was then still in the penitentiary of the state of California, and was then also the husband of the said Maria Valenzuela de Pena; that neither he nor his said wife ever made a bona fide settlement upon the land in controversy and never received any patent or other title thereto from the United States; that on the restoration of the land in controversy to entry, and on September 21, 1898, the said Joseph Moynier made homestead entry at the United States land office at Los Angeles, Cal., for the aforesaid lots 3, 4, 5, and 6, section 31, township 1 south, range 16 west, San Bernardino base and meridian; that at the time of making homestead proof, and in order to procure an entry upon the said land, the said Joseph Moynier on Sep-

162 F.—59

tember 21, 1898, in accordance with the provisions of section 2290 of the Revised Statutes of the United States, make an affidavit before the register and receiver that he was not acting as the agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation, or syndicate to give them the benefit of the land so entered, or any part thereof, and that he did not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, and that he had not directly or indirectly made, and would not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he might acquire from the government of the United States would inure in whole or in part to the benefit of any person except himself, and after having made such affidavit and proof to the satisfaction of the said register and receiver, and having paid the fees required by law, a certificate of entry in due form was issued to him for such land as a homestead; that on the 22d day of January, 1904, the said Joseph Moynier made proof by himself, and corroborating witnesses, before the United States land office at Los Angeles, that he had entered, and duly complied with the homestead laws of the United States, for said lots 3, 4, 5, and 6, being the northwest fractional quarter of section 31, township 1 south, range 16 west, S. B. M., and duly made proof to the satisfaction of the register and receiver that he was admitted to citizenship of the United States on the 5th day of December, 1903, and that he had declared his intention to become a citizen of the United States on the 31st day of August, 1896, and that he had actually established his residence upon the said land in November, 1897, and on that day had built· a house of lumber, 16 by 22 feet in size, of a value of $50, and a stable of a value of $50, fencing of a value of $30, and cleared the land to the value of $150, and had planted a vineyard to the value of $50, and that he, the said Joseph Moynier, had not, prior to said homestead proof, sold, conveyed, or mortgaged any portion of the said land; that thereafter, on the 11th day of Nevember, 1904, the proper officers of the United States duly and regularly issued to the said Joseph Moynier a patent conveying to him the land so entered by him, and duly and finally determining on that date that the facts set forth in the application and proofs of the said Moynier were true, and that the said Moynier did first declare his intention to become a citizen of the United States on the 31st day of August, 1896, and did first become a citizen of the United States on the 5th day of December, 1903, and that he did first settle upon said land in November, 1897, and that he did then build his said home and made his said improvements as he alleged and proved that he had done, and that he had not sold, conveyed, or mortgaged any portion of the said land prior to the date of his said homestead proof; that at no time prior to April 13, 1898, when the land in controversy was restored to entry and settlement, was the said Joseph Moynier a settler or a bona fide settler under the homestead laws of the United States upon the land in controversy; that the pretended deed of the said Moynier to said Southern Pacific Railroad Company was, when so executed, and at all times since has been, void and of no effect, and in violation of the provisions of sections 2288, 2289, 2290,

and 2291 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1385–1394).

The amended bill further alleges: That by immediate and mesne conveyances the complainants have purchased from and under the said Joseph Moynier the whole of the land in question; that since April 13, 1898, complainants and their predecessors in interest have been in the actual, exclusive possession of the whole thereof, and during the said time have continuously cultivated the whole thereof as a farm; that they purchased the said land in good faith, believing that they were acquiring a good title to the same from and under the said Joseph Moynier, for a valuable consideration, to wit, the sum of $4,200, which sum the complainants paid on the 1st day of March, 1905, without either of them having any actual knowledge or notice, other than such constructive notice given by the record of the said pretended deed, that the defendants or either of them, or their or either of their predecessors, had or claimed to have any title, interest, or easement upon the said land, and in good faith believing that the title to said land was vested in the said Joseph Moynier by said patent from the United States, in fee, and free and clear from any rights of way or easements or servitudes of any kind; that the said land lies upon and along the shore of the Pacific Ocean, upon the north coast of Santa Monica Bay, for a distance of half a mile, and is of great value, largely on account of its water front; that it is valuable for the construction of wharves, for shipping purposes, and for fisheries, and other purposes as water front land; that the said land, commencing at the line of high tide, is abrupt and elevated, rising to a height of from 6 feet to over 50 feet upon the line of high tide; that the only means of access thereto is by a passageway or road along the shore situated at the line of high tide, and which has a width of 8 feet; that the defendants claim and pretend that they have a right to said 100-foot strip along the ocean through the complainants' said alleged land, under and by virtue of said pretended deed from said Maria Valenzuela de Pena and Joseph Moynier to the said Southern Pacific Railroad Company; that the said defendants have caused said pretended deed to be recorded in the office of the recorder of Los Angeles county, Cal.; that they have caused maps to be made and published, exhibiting upon such maps the alleged tract of the complainants, with a railroad right of way staked out and located upon and over the same of 100 feet in width, and for one-half mile along the seashore, as land conveyed to said Southern Pacific Railroad Company by the said pretended deed of the said Joseph Moynier; that the said pretended deed clouds the title of the complainants; that the said acts and claims of the defendants thereunder greatly embarrass the complainants in their title, and greatly affect the market value of the alleged land of the complainants; that the defendants threaten to, and, unless enjoined, will continue to, exhibit the said deed and maps, and make such pretended claims to the said strip of land; that they claim that the said deed to the defendant Southern Pacific Railroad Company is a valid deed conveying a strip 100 feet wide over the alleged land of the complainants, and threaten to, and, unless enjoined, will, go upon the said land of the complainants, and commence, prosecute, and complete the con-

struction of a railway for a distance of over 2,600 feet over and upon the alleged land of the complainants, and occupy the water front of the said tract of land, and will thereby obstruct and destroy the access from the alleged land of the complainants to the ocean and from the ocean to the said alleged land of the complainants, and will so tear up the ground, and excavate the same, as to always obstruct the access to said land from other lands lying adjacent to the same and along the coast; that the said acts of the defendants so threatened and about to be committed will change the nature of the alleged lands of the complainants, and practically destroy its market value for residence, business, and wharfage, and other purposes, and valuable uses, to the complainants' damage in a sum exceeding $30,000; that the said defendants, in asserting a claim to the said strip of land, do so under and by virtue of the said pretended deed executed by the said Maria Valenzuela de Pena and Joseph Moynier to the defendant Southern Pacific Railroad Company, and deny the effect and validity of the patent issued by the said United States to Joseph Moynier under which the complainants hold their title to the whole of the land therein described; and that, in threatening to construct said railroad, and thereby destroy the access to and from the alleged lands of the complainants, the said defendants likewise claim the right so to do under and by virtue of the said pretended deed of the said Joseph Moynier, denying the validity and effect of the said patent; that the said defendants have combined and conspired with other persons unknown to the complainants to deny to the complainants the right claimed by them under the said patent, and, to carry into effect such conspiracy, have caused the aforesaid deed of the said Maria Valenzuela de Pena and Joseph Moynier to be recorded in the office of the recorder of Los Angeles county, and have actually commenced the construction of a railroad along the coast over the alleged lands of the complainants, and are still engaged in constructing and completing the same; that the land in controversy has a value exceeding $30,000, for residence, business, and wharfage uses; and that the damage to the alleged lands of the complainants on account of the construction of the said railway as so threatened under the claim of right by virtue of the said pretended deed, will exceed the sum of $30,000.

The prayer of the bill is for a temporary injunction restraining the defendants from entering upon the land in controversy, and from constructing any railroad thereon, and from taking or removing the earth or rock therefrom, or from in any way depriving the complainants of free access to their said alleged land, and from claiming any right thereto under or by virtue of the said pretended deed from Maria Valenzuela de Pena and Joseph Moynier, and that upon final hearing such injunction be made permanent; that the alleged deed from Maria Valenzuela de Pena and Joseph Moynier to the defendant Southern Pacific Railroad Company be canceled; that an accounting may be had of all damages that may have been sustained by the complainants before or during the trial of the cause, in the construction of the said railroad or otherwise, or in the commission of any of the acts or things alleged to have been committed or threatened by the defendants; that the court may finally determine what, if any, right or easement the de-

fendants, or either of them, have over or upon the alleged lands of the complainants, under said deed; and that if it shall be found that the defendants, or either of them, have any right or easement therein, the court will define and determine the extent thereof, and will require any railroad to be constructed over and upon the alleged land of the complainants to be constructed so as not to interfere unnecessarily with the access thereto, or to the water, from said land, and will require the said railroad to be built at a suitable elevation above the line of high tide, and with suitable overgrade and undergrade and other crossings, for roads, highways, and railroads to and from and over the alleged land of the complainants, and to and from any wharves which may be constructed by the complainants or their assigns, upon the said land, and for such further relief as may seem equitable.

The Los Angeles Pacific Company made default, but the defendant Southern Pacific Railroad Company answered the amended bill, denying any title in the complainants of any character to any of the land described in the deed from Maria Valenzuela de Pena and Joseph Moynier to the defendant Southern Pacific Railroad Company.

By its answer, the Southern Pacific Railroad Company admits and alleges that on March 22, 1893, Joseph Moynier duly made, acknowledged, and delivered to it the deed last referred to, and that the deed was duly recorded April 11, 1893, in the records of Los Angeles county.

"(3) Admits and alleges that on September 21, 1898, the said Joseph Moynier, then and for many years theretofore a homestead settler upon and occupant of the land, duly made homestead entry under the general land laws of the United States, in the proper land office of the United States, of and for lots 3, 4, 5, and 6, of section 31, township 1 south, range 16 west, San Bernardino base and meridian, situated in the county of Los Angeles, state of California, and embracing all the lands described in the deed referred to in the first paragraph of this separate answer, and that thereafter such proceedings were had as that on January 22, 1904, a patent was duly issued by the United States conveying unto the said Joseph Moynier all of the said lots and land in this paragraph described.

"(4) Alleges that on March 8, 1902, the grantee named in the deed referred to in the first paragraph hereof, by instrument in writing, duly transferred title to, and right of exclusive possession of, the lands described in the deed referred to in the first paragraph of this separate answer, unto it (this defendant), and it (this defendant) thereby became, has ever since remained, and still is, the owner and entitled to exclusive possession of all lands described in the said deed.

"(5) Alleges that it (the defendant) has no knowledge nor information about such matters, and on that ground denies that complainants, or either of them, purchased or attempted to purchase from the said Joseph Moynier the lands described in the third paragraph of this separate answer, or any part thereof, and in this behalf alleges that, were it in any wise true that complainants did make or attempt to make such purchase, it was with knowledge of the record of the deed referred to in the first paragraph of this separate answer, and subject, subordinate, and servient to the right and title transferred by said deed and fed and perfected by the patent to Joseph Moynier, hereinbefore referred to.

"(6) Denies that the land described in the deed referred to in the first paragraph of this separate answer is of great value, or of any value in excess of $500, on account of its water frontage, or its availability for the construction of wharves, or for shipping purposes, or for fisheries, or for all such and all other purposes as water front land, and denies that the

only means of access to said land is by a passageway or road having width of about eight feet along the shore at the line of high tide.

"(7) Denies that construction of its (this defendant's) railroad over the land described in the deed referred to in the first paragraph of this separate answer will occupy the water front of said land, or will obstruct or destroy access of any land to or from the ocean, or to or from adjacent lands, or will change the nature of any land or destroy its market values for residences, business, wharfage, or other purposes or uses, to complainants' injury or damage in a sum exceeding $30,000, or in any sum whatsoever.

"(8) Denies that the lands described in the amended bill of complaint as having been purchased by complainants for $4,200 have any value, for all uses and purposes whatsoever in excess of the said sum alleged to have been paid therefor, or that construction of its (this defendant's) railroad on the land described in the said deed referred to in the first paragraph of this separate answer would damage said land, or complainants' right, title, or interest therein, in the sum of $30,000, or in any sum whatsoever.

"(9) Alleges that the matter in dispute in this case does not equal nor exceed, exclusive of interest and costs, the sum or value of $2,000, for which reason, and the other reasons set forth in its (this defendant's) demurrer herein, it (this defendant) denies the jurisdiction of this court to hear or determine this case."

To this answer the complainants filed a replication.

At the trial the respective parties presented a "Stipulation as to Evidence," stipulating in evidence the various decisions and acts of Congress referred to in the pleadings, and also the following:

### "Subdivision 4.

"Item 12. Lots 3, 4, 5, and 6 of section 31, township 1 south, range 16 west, San Bernardino meridian, is within indemnity limits of the land grant made unto the Atlantic & Pacific Railroad Company by the said act of Congress of July 27, 1866, and within primary limits of the land grant made unto the Southern Pacific Railroad Company by the said act of Congress of March 3, 1871.

"Item 13. The official plat of survey of the lots described in the foregoing item 12 was approved by the United States Surveyor General for California on June 20, 1896, and duly filed in the United States land office at Los Angeles on October 5, 1896.

"Item 14. On September 21, 1898, one Joseph Moynier, then an occupant of the land described in item 12 hereof and qualified to make entry thereof under the general homestead laws of the United States, made and filed in the United States land office at Los Angeles his homestead entry of the said land, and such proceedings were thereafter had in the said Los Angeles land office and General Land Office of the United States, as that on November 1, 1904, the United States, by its proper officers, duly issued unto the said Joseph Moynier, under and in pursuance of his said homestead entry, United States patent, in proper form, for the said land.

### "Subdivision 5.

"Item 15. Exhibit A to complainants' bill of complaint herein is a true copy of the original deed and certificate of acknowledgement and correctly shows the date and place in the records of Los Angeles county, when and where the same was duly recorded, and Joseph Moynier, party to the said deed, is the Joseph Moynier referred to in item 14 hereof.

"Item 16. On February 28, 1905, said Joseph Moynier duly made, executed, and delivered his deed of grant purporting to convey to George H. Blount the lands described in item 12 hereof, which deed was on March 1, 1905, duly recorded in the office of the county recorder of Los Angeles county, Cal., in Book 2248, p. 149, of Deeds; and on March 1, 1905, the said George H. Blount duly made, executed, and delivered his deed of grant purporting to convey to plaintiff Joseph H. Call the said lands described in item 12 hereof, which deed was on March 1, 1905, duly recorded in the office of the county

recorder of said Los Angeles county in Book 2241, p. 143, of deeds, and at that time said Joseph H. Call duly paid to the said Joseph Moynier $4,000 gold coin, in consideration of the said conveyances from Joseph Moynier to George H. Blount and from George H. Blount to Joseph H. Call. At the time of purchasing said lands, Joseph H. Call believed that said deeds from Moynier to Blount and from Blount to him (Joseph H. Call) conveyed to him (Call) an absolute title in fee simple to the whole of said lands, and at that time he (Joseph H. Call) had no actual knowledge that the Southern Pacific Railroad Company had or claimed to have any title, interest, or estate in said lands. On April 26, 1905, said Joseph H. Call by deed of grant duly transferred to George C. Call all of his right, title, interest, and estate in and to the lands described in item 12 hereof, which deed was recorded in said Los Angeles county records in Book 2705, p. 120, of Deeds, and on August 25, 1906, said George C. Call by deed of grant duly transferred unto said Joseph H. Call and L. Dora C. Call, husband and wife, as joint tenants, all of his right, title, interest, and estate in and to the said lands described in item 12 hereof, which said deed is of record in said Los Angeles county in Book 2825, p. 133, of deeds.

"Item 17. On March 8, 1902, the Southern Pacific Railroad Company named in the deed copied as Exhibit A to complainants' bill of complaint duly transferred all its property and property rights, including such (if any) property or property right as was acquired by or in virtue of the said deed, unto the defendant Southern Pacific Railroad Company."

Certain witnesses were also examined by the respective parties, several of them in respect to the value of the strip of land described in the deed from Moynier to the Southern Pacific Railroad Company; each of them giving the reasons for the valuation so placed upon the strip: The witness Curtis stating that it is worth about $25,000, the witness Bixby stating that it is worth about $35,000, the witness Blount stating that it is worth about $35,000, and the complainant Call testifying that, in his opinion, the value of the strip, if taken for railroad purposes, together with the damage to the remainder of the tract, would be over $40,000. The latter witness also testified that at the time he made his purchase from Moynier he had no actual notice of any kind that the defendant railroad company claimed any interest in the property, and that, before purchasing the land, he caused the Title Insurance & Trust Company of Los Angeles to furnish him a certificate, showing a clear title in Moynier to the land with the single exception of a traveled wagon road along the beach.

Such being the pleadings of the parties, and the facts as shown by the record, the law governing the case may, I think, be briefly stated. The objection made to the jurisdiction of the court on the ground of insufficiency of the amount in controversy is disposed of by the testimony last referred to in the statement of the case. Manifestly, the real question in the case is whether the deed of March 27, 1893, from Moynier to the Southern Pacific Railroad Company, was or was not a valid instrument. By it Moynier undertook to---

"grant and convey unto the said party of the second part (the Southern Pacific Railroad Company), and to its successors and assigns forever, all of that certain strip or parcel of land lying, being and situate in the county of Los Angeles, in the state of California, and described as follows, to wit: A strip or tract of land one hundred feet wide, lying equally on each side of the located line of the said company's railroad where the same is located through the southwest quarter of section thirty-one, township one south, range sixteen west, S. B. M., being more particularly described as follows, to wit: Commencing for the same at a point in the center line of the said

railroad where said center line intersects the east line of said quarter section, and running thence westerly along said center line of said railroad along the coast above the line of high tide, embracing a strip of land fifty (50) feet wide on each side of said center line to the westerly line of said tract and the eastern line of land of E. N. Valenzuela, a distance of half mile more or less, and containing an area of six acres of land, more or less."

The strip of land embraced by that deed the complainants allege they own in fee, which allegation the defendant railroad company denies, and alleges it owns, by virtue of the deed from Moynier, the subsequent patent issued to him by the government in pursuance of his homestead entry, and the conveyance from the grantee of the Moynier deed to the defendant railroad company. It seems too obvious for argument that the validity of the deed from Moynier to the Southern Pacific Railroad Company depends wholly upon the laws of the United States, and that therefore it is a federal question. See Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 433, 27 Sup. Ct. 350, 51 L. Ed. 553.

Was that deed of any validity? I think not. It was, in my opinion, a nullity for two reasons:

First. Because at the time it was made Moynier was an alien and had not then declared his intention to become a citizen of the United States, and he was therefore then incapable of acquiring any land under the homestead laws.

Second. Because the land itself was then reserved by the government from any disposition under such laws.

The contention that when Moynier afterwards acquired the government title to the tract embraced by his homestead entry (including the strip here in controversy), under and by virtue of its homestead laws, such title related back and fed the conveyance that he had attempted to make, is, I think, an attempt to put the doctrine of relation to an unwarranted use. That doctrine is a fiction of the law, adopted by the courts for purposes of justice. It cannot, in my opinion, be properly resorted to for the purpose of giving effect to an act which was not only unauthorized and illegal, but absolutely void as against public policy. In Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272, it was distinctly adjudged by the Supreme Court that a contract by a homesteader to convey a portion of a tract, when he shall acquire title from the United States, is against public policy and void. A fortiori, is a complete nullity a pretended conveyance by one claiming to be a homesteader, but who was at the time an alien, and who had never declared his intention to become a citizen of the United States.

I think the complainants are entitled to judgment.

Ordered accordingly.