PATHWAY FINANCIAL, Plaintiff-Appellee, v. JAMES D. BEACH *et al.*, Defendants-Appellants.

First District (4th Division) No. 86—2932

Opinion filed October 15, 1987.

James D. Beach, of Sauk Village, appellant *pro se.*

Bashaw & Associates, P.C., of Hinsdale (Steven B. Bashaw, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

James D. Beach appeals from the entry of judgment for mortgage foreclosure that was entered September 24, 1986, upon Pathway Financial's motion for summary judgment. Pathway held the mortgage on Beach's home in the original principal balance of $47,700.

While Beach does not deny that he defaulted on the mortgage and owes the money to the bank, he contends that (1) the trial court "wrongfully diminished" Beach's title, which he claims is superior to that of the bank by virtue of a Federal land patent; and (2) the court refused to find that the bank owed Beach a fiduciary duty with respect to explaining the terms and ramifications of the mortgage instruments.

We affirm.

BACKGROUND

Pathway instituted the pending action in May 1986, following Beach's failure to meet the monthly payment obligations under his mortgage for approximately eight or nine months. Initially, Beach contested the jurisdiction of the court by filing a *pro se* special and limited appearance, along with a motion to dismiss based upon the allegation that the complaint failed to state a cause of action. Attached to the special and limited appearance was an affidavit alleging that Pathway had committed a fraud in the original loan transaction by failing to explain to Beach the waiver of homestead provision in the mortgage.

Pathway filed motions to strike the special and limited appearance

and the motion to dismiss. In his answer to these motions, Beach raised allegations and argument relating to his holding of a Federal land patent.

The trial court granted the motions to strike and allowed Beach to appear generally and to file an answer to the complaint. A date was also set for further hearing. Beach then filed a motion to dismiss the complaint, an answer, and a motion to deny Pathway's petition for summary judgment, which petition had been filed previously.

Beach's motion to dismiss included the contention that plaintiff's demand to be paid in specie or currency rather than gold was in violation of the United States Constitution; that Pathway had unlawfully paid for the filing of its complaint in currency rather than in the form of gold and silver, as required under Illinois statute; and that the provision in the promissory note that waived notice of dishonor and presentment was a bar to the action. His answer contained admissions of every paragraph of the complaint except for certain subsections of paragraph 3, which he generally denied.

On September 24, 1986, the trial court heard argument on the motions. The court denied Beach's motion to dismiss and granted Pathway's petition for summary judgment. Judgment of foreclosure was then entered in the amount of $47,348.14. The court also found that the Federal government had a subordinate lien in the premises in the amount of $59,044.52, plus penalties and interest.

Beach did not file a bond or otherwise stay enforcement of the final judgment and the property was sold by sheriff's sale. Pathway bid its lien at the sale, and the court approved the sheriff's report of sale. The redemption period expired on April 30, 1987. As of the date of oral arguments in this case, Beach was still in possession of the premises, for which he has paid no rent or other monies. Pathway had filed for a writ of assistance, which was pending before the trial court.

OPINION

I

Beach raises the history of the English feudal system of land ownership as the starting point for his assertion that the trial court wrongfully diminished his title to his real estate. Although interesting, this history has little to do with the contemporary statutory mortgage system. Lending institutions are not feudal lords who charge their vassals rents for the use of the land. They obtain their authority to "seize the land," or foreclose their mortgages and sell the property, by virtue of the borrower-landowner's consensual grant

of a lien that is specifically intended to encumber the real estate to the extent of the money borrowed.

■■ It is true, as both parties agree, that Illinois is a "lien theory" State, as distinguished from title theory. (See *In re Michigan Avenue National Bank* (1980), 2 Bankr. 171.) The lender possesses a security interest in the land instead of legal title. However, like any other encumbered property, real estate is subject to being sold to repay the secured party for the loan. That is the purpose of a lien; to ensure that the secured loan will be repaid out of the proceeds of a proper sale of the collateral, if the debtor lacks the funds or refuses to pay the loan installments.

■■ Beach nonetheless asserts his Federal land patent as an absolute bar to the mortgagee's ability to take his property through a foreclosure and sale. Apparently, this is based on the idea that the holder of a Federal land patent has an "eternal contract" or superior title that cannot be disturbed by the State or any other body.

Beach cites cases, mostly from the 1800s, which explain and confirm the superiority of title that is held by the bearer of a land patent. To facilitate the distribution of public lands and give homesteaders a stake in the development of the country, the States ceded to the Federal government certain lands. The States essentially gave up control over or claim to the lands, which were then made subject to Federal land patents. (See *Anderson v. Carkins* (1890), 135 U.S. 483, 34 L. Ed. 272, 10 S. Ct. 905; *Ruddy v. Rossi* (1918), 248 U.S. 104, 63 L. Ed. 148, 39 S. Ct. 46.) The value of the patent is to give its holder "superior and conclusive evidence of legal title" which would be paramount in actions of ejectment (forcible entry and detainer), for example. *Gibson v. Chouteau* (1871), 80 U.S. (13 Wall.) 92, 20 L. Ed. 534.

None of the above three cases involve a mortgage encumbrance on patented lands. In *Ruddy v. Rossi*, the issue was whether land could be sold to satisfy the landowner's indebtedness that occurred *prior* to the issuance of the patent; the court held that it could not. *Gibson v. Chouteau* concerned a conflict, in an ejectment action, as to which party had superior title, the prevailing party being the one whose chain of title could be traced to the original patent holder. *Anderson v. Carkins* involved an invalid attempt between private parties to transfer land in contravention of the Federal act, which required the person acquiring the patent to homestead the property for his own use and not for the commercial benefit of others.

The issue is not the validity or superiority of Beach's title. The mortgage foreclosure proceeding is not one of forcible entry and detainer. The homeowner-borrower has statutory rights of redemption

that protect his interest in keeping his home if he can afford to pay off the loan within a certain period of time after foreclosure and sale. (Ill. Rev. Stat. 1985, ch. 110, par. 12—122.) In the pending case, Beach has had over two years of possession of the house for which he has not made mortgage payments, or any other expenses attendant to owning a home. His financial troubles are not a legal defense to mortgage foreclosure.[1] While we do not doubt the sincerity of his beliefs, the voluntary grant of a security interest in one's home cannot be equated with government action or claims that deprive one of his superior title to land.

The recent case that Beach cites to support the continued validity of Federal land patents is readily distinguishable from the mortgage situation. In *Summa Corp. v. California ex rel. State Lands Com. & City of Los Angeles* (1984), 466 U.S. 198, 80 L. Ed. 2d 237, 104 S. Ct. 1751, the court held that the State of California was time barred from asserting a public trust easement over a private land owner's property because the land owner's "predecessors-in-interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the Act of 1851." (466 U.S. 198, 209, 80 L. Ed. 2d 237, 246, 104 S. Ct. 1751, 1758.) The Supreme Court held that any claim to an easement must have been presented in the patent proceeding or be barred.

 Beach's claim is not one of a patent owner against an involuntary seizure of property that is based on a governmental claim. Rather, he asserts, in effect, that he should not suffer the consequences of his consensual transfer of rights to Pathway, which lent him the money to enable him to purchase the real estate and which undoubtedly would not have done so had it been unable to take its standard mortgage interest in the property to secure the loan. Without such security, few lenders would remain in business and few purchasers could obtain the necessary financing.

Since we find no merit in the argument that the trial court wrongfully diminished Beach's title, we affirm the court's ruling on that basis.

## II

 Beach next contends that Pathway's predecessor-in-interest, from whom the mortgage was obtained, breached a fiduciary duty to

---

[1]In fact, it appears that Beach's "financial difficulties" with the Internal Revenue service, which led to a garnishment against his paycheck, stems from his voluntary actions undertaken because of certain political beliefs that are not relevant here.

him, since Beach lacked legal expertise and legal counsel of his own. He claims that he did not understand certain language in the mortgage instruments and that the attorney for the lender owed him a duty to explain the risks and ramifications of the transaction.

We are aware of no authority that makes a lender the fiduciary of the borrower with respect to giving legal advice as to the effect of the mortgage documents. The lender's attorney owes duties to the lender and has no attorney-client relationship with the borrower. Here, there is no evidence of fraud or misrepresentation of fact that induced Beach to enter into the transaction. Accordingly, there is no basis to award Beach relief under a theory of breach of fiduciary duty.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.