ADAMS *v.* CHURCH.

ERROR TO THE CIRCUIT COURT OF MALHEUR COUNTY, STATE OF
                    OREGON.

No. 169.    Argued March 3, 1904.—Decided March 21, 1904.

On writ of error the finding of facts made in the Supreme Court of the State
    is binding upon, and will be the basis of, the decision of this court.
There is no prohibition in the Timber Culture Act of June 14, 1878, 20 Stat.
    113, as there is in the Homestead Act, against an entryman who has in
    good faith acquired a holding under the act, alienating an interest in the
    lands prior to the issuing of the final certificate.

THIS is an appeal from a decree of the Circuit Court of
Malheur County, State of Oregon, entered by direction of the
Supreme Court of Oregon.

The action originated in a suit by Steel against Adams to settle the affairs of a copartnership theretofore carried on by the parties, and so far as a Federal question is concerned, involves the right of the plaintiff below to have conveyed to him an interest in a certain tract of land, acquired by Adams under the Timber Culture Act, before the formation of the partnership. 20 Stat. 113. The defendant denies that this tract of land was included in the partnership property. Upon appeal to the Supreme Court of Oregon, upon whose direction the decree was entered, it was found that at the time of the formation of the partnership Adams was the owner of a timber culture claim covering the land in controversy, and the contention of the plaintiff, that it was agreed and understood at the time of forming the partnership that such claim should be conveyed to and become a part of the assets of the firm as soon as Adams should acquire title from the government, was sustained.

The Federal question made is that such agreement is void as against the statutes and policy of the United States.

*Mr. R. J. Slater,* with whom *Mr. Will R. King* was on the brief, for plaintiff in error:

The necessary rules and regulations under the law which govern this case are contained in the general circular of January 1, 1889, Copp's Land Law, 1890, vol. 2, p. 85, in which § 5 provides for the affidavit required by the act itself, and § 24 provides where, when and before whom the final proofs and affidavits may be made. Section 26 provides what character of proof shall be made and the form thereof, viz., forms 4–093 and 4–385 and 4–386.

The Timber Culture Act and the rules and regulations promulgated by the Commissioner of the General Land Office for the purpose of carrying that law into effect must be read and construed together and the affidavit required by the regulation is as binding as that required by the act. Such rules have the force of law, *United States* v. *Eaton,* 144 U. S. 688,

and a contract such as the one involved in this case cannot be carried out without perjury. *Heischer* v. *Fleischer*, 91 N. W. Rep. 51.

The conclusion of the state court that such a contract is not inhibited by the act and therefore is not contrary to the public policy of the United States and could be enforced after final entry by the applicant is certainly wrong because it is not necessary that an act should expressly forbid the making of the contract. *Harris* v. *Runels*, 12 How. 99; *U. S. Bank* v. *Owens*, 2 Pet. 527; *The Pioneer*, Deady, 72.

Public policy is determined from the Constitution, laws and decisions of the courts of the United States. 15 Am. & Eng. Ency. of Law, 933.

By comparing the timber culture law with the homestead and preëmption laws it is plain that the general policy of the United States in disposing of the public land is to secure to each entryman his entry and to prevent any one individual from securing either directly or indirectly more than one entry under each of the said laws, and any contract which is designed to subvert that general public policy of the Government cannot be enforced in a court of equity. *Anderson* v. *Carkins*, 135 U. S. 483; *Sims* v. *Bruce*, 4 L. D. 369; *United States* v. *Picard*, 5 L. D. 313, distinguished. And see *Oscanyan* v. *Arms Co.*, 103 U. S. 261.

*Mr Alonzo H. Stewart*, with whom *Mr. Joseph Simon* was on the brief, for defendant in error:

There is nothing in the Timber Culture Act which inhibits the sale of the land after the entryman has complied with the law and completed his entry. No one contends that the application was not made in good faith or that the purpose was not to hold and cultivate the land. Nothing in the case indicates that the entry was made for the purpose of speculation. After making the entry and complying with the law in good faith and without any previous intention or purpose so to do, the entryman contracted to sell to his partnership firm the land

in question and this under the law he had the absolute right to do. See opinion of the Supreme Court of Oregon; *Sims* v. *Bruce,* 4 L. D. 369; *United States* v. *Read,* 5 L. D. 313.

As sustaining this view of the law in analogous cases, see *Arnold* v. *Christy,* 33 Pac. Rep. 619; *Palmer* v. *Marsh,* 24 N. W. Rep. 374; *Richards* v. *Crews,* 11 Oregon, 501; *Hyde* v. *Holland,* 18 Oregon, 337; *Orr* v. *Stewart,* 67 California, 275; *Lang* v. *Morey,* 40 Minnesota, 396.

Upon the question of fact, as to whether Adams contracted to sell to the partnership of Steel and Adams and received the consideration, for the timber culture tract, this court is concluded by the findings of the Supreme Court of Oregon.

It has been repeatedly held, on error to a state court in a chancery case (as also in a case at law) when the facts are found by the court below, that the Supreme Court is concluded by such findings. *Egan* v. *Hart,* 165 U. S. 188; *Dower* v. *Richards,* 151 U. S. 658; *Bartlett* v. *Lockwood,* 160 U. S. 357; *Stanley* v. *Schwalby,* 162 U. S. 255.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The finding of facts made in the Supreme Court of Oregon is binding upon this court and will be the basis of decision here. *Egan* v. *Hart,* 165 U. S. 188; *Dower* v. *Richards,* 151 U. S. 658.

It appears that Adams made the entry under the Timber Culture Act before the partnership agreement was entered into, and there is nothing in the record to show that, in taking the preliminary oath required by the statute, he acted otherwise than in good faith, and stated the truth as to the situation and his purpose in making the entry. As recited in the title, the purpose of the act is to encourage the growth of timber on the Western prairies, and it is intended to induce settlers to plant and cultivate trees with a view to receiving a patent of the lands thus improved. Section 2 of the act (20 Stat. 113) requires the person applying for the benefit of the law to

make affidavit that he is the head of a family (or over twenty-one years of age) and a citizen of the United States, or has declared his intention to become such; that the land specified is devoid of timber; that the entry is made for the cultivation of timber for the exclusive use and benefit of the applicant; that the application is made in good faith, and not for the purpose of speculation, or directly or indirectly for the use or benefit of any other person or persons whomsoever; that affiant intends to hold and cultivate the land and to comply with the provisions of the act, and has not made other entry under the law. Before a final certificate can be given or patent issue, eight years must elapse from the date of entry, and if at the expiration of that time, or within five years thereafter, the person making the entry, or in event of death his heir or legal representative, shall prove by two credible witnesses that he, she or they have planted, and for not less than eight years have cultivated and protected, the required quantity and character of trees; that not less than twenty-seven hundred trees were planted on each acre, and that at the time of making such proof there shall be then growing six hundred and seventy-five living and thrifty trees on each acre, a patent shall issue for the land.

It is the contention of the plaintiff in error that these provisions demonstrate the policy of the law to grant the lands in question to the person filing the entry, his heirs and legal representatives, and none other; and that to make the sale of an interest in the lands to another as a partner, as is found to have been done in this case, is void as against public policy. It is pointed out that the final affidavit, required by the rules and regulations of the General Land Office made under authority of section 5 of the act, is to be in the same terms as the preliminary one, and requires the claimant to make oath that his entry was made in good faith, and not for the purpose of speculation or indirectly for the benefit of any other person whomsoever.

This requirement and the general purpose indicated in the

terms of the act, it is argued, bring the case within the reasoning and spirit of *Anderson* v. *Carkins*, 135 U. S. 483. In that case it was held that a court of equity would not grant a decree for specific performance of an agreement to sell the interest of the homesteader made after settlement and before the oath is filed for final certificate. But the homestead act specifically requires that the applicant shall make affidavit before entry is made that it is for the purpose of actual settlement and cultivation, and not directly or indirectly for the use or benefit of any other person. Rev. Stat. sec. 2290.

Further, the final proof requires affidavit by the applicant "that no part of such land has been alienated except as provided in section 2288" (Rev. Stat. § 2291), which section limits the right of alienation to "church, cemetery or school purposes, or for the right of way for railroads."

In this state of the law, this court, in the *Anderson* case, in an opinion by Mr. Justice Brewer, sustained the contention in behalf of Anderson "that the homestead is a gift from the Government to the homesteader, conditioned upon his occupation for five years, and upon his making no disposition or alienation during such term; that the affidavit of non-alienation is as clear an expression of legislative intent as a direct prohibition; that the whole policy of government in this respect would be thwarted if the homesteader were permitted to alienate prior to the expiration of the five years; that a successful alienation could be accomplished only by perjury, and an attempted alienation would only offer a constant inducement to the homesteader to abandon his occupation, and thus deprive the purchaser of any possibility of acquiring title to the land; that a contract whose consummation necessarily rests on perjury is illegal." And that courts of equity would not enforce the performance of such contracts "founded upon perjury and entered into in defiance of a clearly expressed will of the government." But this case is very far from supporting the contention of the plaintiff in error as to the construction of the Timber Culture Act. There is no requirement in the latter

act that the entryman shall make oath that he has not alienated any interest in the land. The policy of the government to require such affidavit when it intends to make it a condition precedent to granting a title was indicated in the homestead act, and could readily have been pursued by a similar provision in the Timber Culture Act if it was intended to extend the principle to that statute. The final proof under the latter act has in view sworn testimony that the number of trees required has been planted, and the prairies theretofore barren of timber have been supplied with trees to the extent required by the law before the title shall pass from the government. The policy of the homestead act, no less than the specific statement in the final oath, looks to a holding for a term of years by an actual settler with a view to acquiring a home for himself. In encouragement of such settlers, and none others, homesteads have been freely granted by the government.

This conclusion is in conformity with the decisions of the Land Department in *Sims* v. *Bruce,* 4 L. D. 309, and *United States* v. *Read,* 5 L. D. 313. In these cases the right of the timber culture entryman to dispose of his holding, acquired by him in good faith, before the final certificate, is fully recognized. It is argued that, conceding these decisions to hold that such entryman can sell his claim after entry and before final proof, it does not follow that he can sell it and agree to prove up the entry claim and obtain a patent with a promise to convey it to another, without violating the policy of the law. But as the law does not require affidavit before final certificate that no interest in the land has been sold, we perceive no reason why such contract, as was found to exist by the Supreme Court of Oregon, would vitiate the agreement to convey after the certificate is granted and the patent issued. If the entryman has complied with the statute and made the entry in good faith, in accordance with the terms of the law and the oath required of him upon making such entry, and has done nothing inconsistent with the terms of the law; we find nothing in the fact that, during his term of occupancy he has

agreed to convey. an interest to be conveyed after patent issued, which will defeat his claim and forfeit the right acquired by planting the trees and complying with the terms of the law. Had Congress intended such result to follow from the alienation of an interest after entry in good faith it would have so declared in the law. *Myers* v. *Croft*, 13 Wall. 291.

To sustain the contentions of the plaintiff in error would be to incorporate by judicial decision a prohibition against the alienation of an interest in the lands, not found in the statute or required by the policy of the law upon the subject.

The decree of the state court is

*Affirmed.*