UNITED STATES v. MILLS et al.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1911.)

No. 2,017.

1. PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENT—GROUNDS FOR RELIEF.

The United States has the same remedy in a court of equity to set aside or annul a patent for public land on the ground of fraud in procuring its issue that an individual would have in regard to his own deed procured under similar circumstances, and a patent may be canceled either on the ground that it was obtained by false and fraudulent statements or evidence, or that it was issued through the inadvertence or mistake of the officers of the Land Office, where both grounds are alleged.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

190 F.—33

2. PUBLIC LANDS (§ 35*)—HOMESTEAD ENTRIES—NECESSITY OF RESIDENCE.

Under Rev. St. §§ 2289, 2290, 2291 (U. S. Comp. St. 1901, pp. 1388–1390), construed in connection with other cognate provisions of the homestead law, a homestead entryman owning no land, and applying to enter 160 acres as a homestead, in order to be entitled to a patent, is required to show both actual residence on the land in good faith and cultivation for the required length of time.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 72–77; Dec. Dig. § 35.*

Rights acquired by homestead settlements and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

3. PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENT—FRAUD IN HOMESTEAD ENTRY.

Defendant in making final proof under a homestead entry testified, as did his witnesses, that he established actual residence on the land which he continued for the required five years, and on such proof a patent was issued. It was shown without contradiction that defendant, who was unmarried, never at any time actually resided on the land, but with an uncle some miles distant, going to the land frequently, and once in four or five months taking his bedding and remaining overnight. He built a house on the land, and cleared a small tract, which was cultivated by tenants. Shortly after receiving the patent, he sold the land. *Held,* that such evidence did not show a compliance with the law, but that the patent was issued in reliance on the proofs made which were untrue, and that the government was entitled to its cancellation.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

Appeal from the Circuit Court of the United States for the Southern District of Alabama.

Suit in equity by the United States against Henry C. Mills and others. Decree (169 Fed. 686) for defendants, and complainant appeals. Reversed.

Wm. H. Armbrecht, U. S. Atty., and Alex T. Howard, Asst. U. S. Atty.

Joseph C. Rich and J. Gaillard Hamilton, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a bill in equity by the United States seeking the cancellation of a patent issued to the defendant Henry C. Mills, and the cancellation of a deed made by Mills to Henry Brannan and Thomas H. Brannan. Mills on November 15, 1897, made application to enter 160.66 acres of land in Mobile county, Ala., under section 2289 of Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1388). On January 3, 1903, he made final proof of his entry, testifying that he had established actual residence on the land about January 15, 1898, that he had never been absent from the land more than a month or six weeks at a time, and that the land was cultivated each season. In further proof of the homestead claim, Henry Brannan testified that Mills settled upon the homestead in January, 1898, establishing his actual residence thereon, and that he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had resided continuously on the homestead since January, 1898, and that he had not been absent from the homestead except for two or three weeks at a time when he was off at work. Similar proof was made by Julius Cooley. Upon this proof being made by affidavits signed before the clerk of the Circuit Court of Mobile county, Alabama, the patent was issued by the United States to Mills on March 19, 1904. After Mills obtained the patent, he conveyed the land to Henry Brannan and Thomas H. Brannan on June 16, 1904, for a recited consideration of $80.

The bill alleges that the proof made by Mills was false and fraudulent; that, in fact, Mills never established his residence on the homestead and never lived on it, as testified to by him and by Henry Brannan and Julius Cooley; and that he never cultivated the land. It is also alleged that Mills did not act in good faith in making the entry, that he never lived on the land or intended to live on it, and that Henry Brannan, to whom Mills subsequent to the entry conveyed an interest in the land, was interested in the entry from the first. The answers of Mills and the Brannans deny fraud, and allege the good faith of Mills in making the entry and of the Brannans in making the purchase from Mills.

The main question in the case is one of fact—whether or not Mills entered the land in good faith and really established a residence on it, and lived on it and cultivated it, as required by the homestead law and substantially as shown by his final proof of entry. But the case incidentally involves a construction of the homestead statutes.

[1] The United States has the same remedy in a court of equity to set aside or annul a patent for land on the ground of fraud in procuring its issue that an individual would have in regard to his own deed procured under similar circumstances. United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110. In fact, there are reasons why the government in cases of this kind should not be held to the same diligence in guarding against fraud and imposition as a private owner of real estate. The government owns immense tracts of land which are placed in the hands of officers of the government subject to entry under the pre-emption and homestead laws, and usually these officers are, from necessity, forced to act solely on the ex parte statements of the claimants and their witnesses. If the claimant obtains a patent by false and fraudulent statements or evidence, the government, by direct proceeding in equity, can have it annulled. And the same rule obtains where, by mistake or inadvertence of the officers of the land office, the claimant procures a patent. Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Germania Iron Co. v. United States, 165 U. S. 379, 17 Sup. Ct. 337, 41 L. Ed. 754. In cases where the allegations of the bill and the evidence point to fraud and wrong, and also point to inadvertence and mistake, the bill may be sustained upon the latter ground, if proved, although the proof fails to fully establish the first ground. Williams v. United States, 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026. The bill in this case with particularity charges fraud on the part of the defendants—that the

claimant did not act in good faith; that he never intended to settle on and live on the land as his homestead; that he never lived on it; and that his evidence on final proof to the contrary was false and fraudulent. Besides, it is alleged that the patent was issued by the complainant, relying upon the good faith of this testimony, and believing it to be true in fact.

The averments of the bill being denied, the burden of proof is, of course, on the complainant, and the patent will not be annulled unless the evidence clearly and fully sustains the charges made. Maxwell Land-Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949.

The evidence on which the case was tried below shows that after Mills' entry about an acre and a half of the land was cleared and fenced, part in a garden and part in a lot, and that a building valued at from $50 to $150 was erected, that this building was occupied for several years by negroes placed in possession by Mills, and that they cultivated the garden and lot. It does not clearly appear on what terms the tenants occupied the land, further than that Mills furnished some fertilizers, and that the tenants were not charged rent, but were to take care of the place. The evidence unquestionably shows that Mills never lived on the place. During the five years after application for entry, Mills lived with his uncle, Henry Brannan, either at Brannan's turpentine distillery or at Brannan's house. His own statements in evidence show this. His only acts tending to show an actual personal residence or personal occupancy of the homestead by him was that he would about every four or five or six months take some bedclothes with him and go to the homestead and spend the night, sleeping either on the porch or in the house, and the next day would take his bedclothes and go home. He would sometimes take a witness with him to prove that he did sleep on the homestead. His own testimony shows, we think, that his purpose was not to make a home for himself on the land, but merely to claim the place as a home, and to obtain the title without actual residence on it. Shortly after obtaining the patent, he conveyed it to his kinsmen, who were cognizant of all the facts, and with one of whom he lived during the time he and one of the kinsmen both swore that he had an actual residence on the homestead. The evidence clearly shows that Mills never intended to live on the place during the five years succeeding his entry, and that he did not live on it; that he slept there one night in every four, five, or six months so as to "fulfill the law," as he expressed it to Cowart, and in that way he intended to obtain a patent to the land. If this constitutes residence on the land, he could have obtained in like manner a residence on a dozen other quarter sections at the same time.

[2] The homestead act was passed May 20, 1862, and its purpose is indicated by its title: "An act to secure homesteads to actual settlers on the public domain." Act May 20, 1862, c. 75, 12 Stat. 392. The portions of the act material to this case are found, as amended, in sections 2289, 2290, and 2291 of the Revised Statutes (U. S. Comp. St. 1901, pp. 1388–1390). For convenience of reference, they are cop-

ied in the margin.[1] The first section cited provides that named persons are entitled to enter one-quarter section, or a less quantity, of the unappropriated public lands. The last paragraph of the section provides that a person owning and residing on land may enter other land contiguous to his land, which shall not, with the land already owned by him, exceed 160 acres. The second section cited provides that the applicant shall file in the land office an affidavit stating that the application is made "for the purpose of actual settlement and cultivation," etc., and that the applicant "will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence, and cultivation necessary to acquire title," etc. The third section cited pro-

---

[1] Sec. 2289. Every person who is the head of a family, or who has arrived at the age of twenty-one years, and is a citizen of the United States, or who has filed his declaration of intention to become such, as required by the naturalization laws, shall be entitled to enter one quarter section, or a less quantity, of unappropriated public lands, to be located in a body in conformity to the legal subdivisions of the public lands; but no person who is the proprietor of more than one hundred and sixty acres of land in any state or territory, shall acquire any right under the homestead law. And every person owning and residing on land may, under the provisions of this section, enter other land lying contiguous to his land, which shall not, with the land so already owned and occupied, exceed in the aggregate one hundred and sixty acres.

Sec. 2290. That any person applying to enter land under the preceding section shall first make and subscribe before the proper officer and file in the proper land office an affidavit that he or she is the head of a family, or is over twenty-one years of age, and that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, persons or corporation, and that he or she will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence, and cultivation necessary to acquire title to the land applied for: that he or she is not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation, or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person, except himself, or herself, and upon filing such affidavit with the register or receiver on payment of five dollars when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he or she shall thereupon be permitted to enter the amount of land specified.

Sec. 2291. No certificate, however, shall be given, or patent issued therefore, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law.

vides that no patent shall be issued for the land "until the expiration of five years from the date of such entry," and it is required that the applicant shall prove by two witnesses that he has "resided upon or cultivated" the land for five years. It will be noted that the first section allows an entry, first, by an applicant who owns no land; and, second, by an applicant who owns less than 160 acres, and who is allowed to enter enough contiguous land to enlarge his homestead to 160 acres. The third section cited, standing alone, would indicate that both residence and cultivation were not required to obtain a patent, because the applicant is required to prove that he has "resided upon or cultivated" the land for which he seeks the patent. But the second section cited contains language, which we have quoted, which tends to show that "residence *and* cultivation" are necessary to acquire title. When the applicant is a person who, owning less than 160 acres, seeks to enlarge his homestead by an entry of other land, it is clear that he would not be required to move from the land owned by him to the contiguous land which he seeks to enter. In such case residence on the land sought to be added to his homestead would not be necessary. Cultivation for the required length of time would be sufficient. But in the case at bar the entryman was not applying for an addition to land already owned by him, but, owning no land, he applied to enter a homestead of 160 acres. And the question is in such case, Should the statute be so construed as to require him to show both residence and cultivation to entitle him to a patent?

It is contended by the claimant that his actual residence on or occupancy of the land was unnecessary; that it was sufficient for him to have had part of it cultivated.

This contention is based mainly on section 2291 of the Revised Statutes. This section provides that "no certificate * * * shall be given, or patent issued therefor, until the expiration of five years from the date of such entry," and that the claimant, to be entitled to a patent, shall prove by two credible witnesses that he has "resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit," etc. Insistence is made on the disjunctive conjunction "or," and the contention is made that it is unnecessary for the claimant to have resided on the land if he cultivated it or caused it to be cultivated. The government contends that this statute should be construed in pari materia with other sections of the Revised Statutes, which, together, constitute the homestead law. Section 2290, the section immediately preceding the one just quoted, provides that the person seeking to make the entry under the homestead law shall make affidavit that his "application is honestly and in good faith made for the purpose of actual settlement and cultivation," and that he "will faithfully and honestly endeavor to comply with all the requirements of law as to *settlement, residence, and cultivation* necessary to acquire title to the land applied for," etc. And in stating the circumstances under which the entered homestead will revert to the government it is provided that it will so revert when the claimant "has actually changed his *residence, or abandoned the land* for more than six months at any time. * * *" R. S. U. S. § 2297 (U. S. Comp.

St. 1901, p. 1398). This language strongly indicates that the claimant is required to establish a home on the land, but that he may absent himself from it temporarily for as long as six months.

Again, section 2308 (page 1417) provides that, where a soldier or sailor is actually enlisted and thus employed at the time of entry, his service shall be construed as equivalent "to a residence for the same length of time upon the tract so entered," and, if his entry has been canceled by reason of such absence and the tract has been disposed of, he may enter another tract, and his right to a patent therefor may be determined "by the proofs touching his residence *and* cultivation of the first tract." Section 2305 (page 1413) had already provided, referring to soldiers and sailors, that no patent shall issue unless the settler has "resided upon, improved, *and* cultivated his homestead" for at least a year; and this section also refers to certain acts as being equivalent to a performance of all requirements as to residence and cultivation for the full period of five years.

These sections, all found together in chapter 5, tit. 32, Rev. St., strongly indicate the legislative intention that both residence and cultivation of the land are required to entitle the entryman to a patent.

In laws passed subsequent to the homestead law Congress has uniformly referred to the latter as requiring of the entryman actual residence on the land.

In Act Jan. 19, 1895, c. 34, 28 Stat. 634 (U. S. Comp. St. 1901, p. 1408), providing relief for settlers whose homesteads were destroyed by forest fires in Wisconsin, Minnesota, and Michigan, Congress, in extending two years' additional time in which to make final proof, said that any temporary absence within two years from the date of the act "shall be deemed constructive possession *and residence*," but shall not be deducted from the time required to make final proof.

The Act July 1, 1879, c. 63, 21 Stat. 48 (U. S. Comp. St. 1901, p. 1399), provided for leave of absence where crops were injured by grasshoppers. Absence not exceeding one year was authorized under certain conditions. This provision would have been useless had residence not been required.

And again, in Act March 2, 1889, c. 381, § 3, 25 Stat. 854 (U. S. Comp. St. 1901, p. 1400), leave of absence is provided for when for good reason the settler cannot secure a support for himself and family "upon the lands settled upon." A leave of absence not exceeding one year was authorized; *"Provided,* that the time of such actual absence shall not be deducted from the *actual residence required by law."*

In Act Feb. 26, 1896, c. 31, 29 Stat. 16, absence for one year from settlements upon the Yankton Indian Reservation was authorized; *"Provided,* that the settler shall not receive credit upon the period of *actual residence required by law,"* for the time he was thus absent.

Act March 3, 1879, c. 191, 20 Stat. 472 (U. S. Comp. St. 1901, p. 1401), in granting additional rights to homestead settlers on public lands within railroad limits, provided that in cases of surrender of the original entry and re-entry under the conditions of the act:

"* * * The residence and cultivation of such person upon and of the land embraced in his original entry shall be considered residence and culti-

vation for the same length of time upon and of the land embraced in his additional or new entry, and shall be deducted from the *five years' residence and cultivation required by law.*"

The language is repeated in Act July 1, 1879, c. 60, 21 Stat. 46 (U. S. Comp. St. 1901, p. 1402).

Section 6, Act March 2, 1889, c. 381, 25 Stat. 854 (U. S. Comp. St. 1901, p. 1404), uses the words, "shall have actually and in conformity with the homestead laws resided upon *and* cultivated the lands," etc.

Since its enactment the homestead law has been consistently construed by the department charged with its administration as requiring of the homesteaders actual residence as well as cultivation for the five year period. This is shown by circulars issued by the department and by various decisions. Where parties made considerable improvements, but failed *in residence,* their rights as homestead claimants were held forfeited. Land Laws, Regulations and Decisions, 2 Lester, 264. In holding that a homestead entry should be canceled, Secretary Schurz said (December 5, 1878) that the claimant is one of a class "who do not reside upon the land entered by them, but seek to keep up a residence thereon by going thereto and remaining over night once or twice in six months." Byrne v. Catlin, 1 Copp's Public Land Laws (1882) 406. In that case it was shown that the entryman resided at his father's home, a few miles distant from the land he claimed as a homestead. The courts, except when there are strong reasons for a contrary course, will respect the construction of a statute upon which the department has uniformly proceeded in the administration of the public lands. McMichael v. Murphy, 197 U. S. 304, 25 Sup. Ct. 460, 49 L. Ed. 766.

No controlling case is cited in which the court was required to decide the question we are considering, but there are numerous cases in which expressions are used which tend to sustain the legislative and departmental construction.

In St. Paul Minn. & Man. Ry. Co. v. Donohue, 210 U. S. 21, 31, 28 Sup. Ct. 600, 603 (52 L. Ed. 941), Mr. Justice White observed:

"By the homestead law residence upon and cultivation of the land was required."

In Anderson v. Carkins, 135 U. S. 483, 487, 10 Sup. Ct. 905, 906 (34 L. Ed. 272), Mr. Justice Brewer said:

"The law contemplates five years' continuous occupation by the homesteader. * * *"

In Adams v. Church, 193 U. S. 510, 516, 24 Sup. Ct. 512, 514 (48 L. Ed. 769), Mr. Justice Day said:

"The policy of the homestead act, no less than the specific statement in the final oath, looks to a holding for a term of years by an actual settler with a view to acquiring a home for himself."

In Bohall v. Dilla, 114 U. S. 47, 51, 5 Sup. Ct. 782, 784 (29 L. Ed. 61), Mr. Justice Field said:

"Those laws are intended for the benefit of persons making a settlement upon the public lands, followed by residence and improvement and the erec-

tion of a dwelling thereon. This implies a residence both continuous and personal."

There are numerous other cases where observations are made to the same effect. Shiver v. United States, 159 U. S. 491, 497, 16 Sup. Ct. 54, 40 L. Ed. 231; McCune v. Essig, 199 U. S. 382, 389, 26 Sup. Ct. 78, 50 L. Ed. 237.

In United States v. Collett, 159 Fed. 932, 933, 87 C. C. A. 460, 461, the court said:

"The statute requires residence and cultivation in good faith for a period of five years by an entryman to entitle him to a patent of a homestead."

We are of opinion that by a proper construction of the statute the entryman in a case like this is required to show residence on the land for five years to entitle him to a patent.

[3] We concur fully in the contention of defendant's counsel that the statutes should not be construed strictly and harshly against the homesteader, but that the land laws should be administered liberally to fulfill their purpose. A temporary absence from the home or delay in making improvements or failure for unavoidable reasons to cultivate the land for a season might ordinarily be excused. Possibly, failure for unavoidable reasons to reside on the land might, under some circumstances, be excused. But it was not intended that a patent should be granted when the entryman never lived on the land—when he could have lived on it if he had wished to do so, and when, during the entire five years succeeding the filing of his claim, he had a home and residence elsewhere.

Technical considerations should not be allowed to defeat the claimant, but we cannot see how he could have justly claimed that he had established a home on the entered land within the meaning of the statute, when he had never lived on the land before he obtained the patent and when all the time he had a well-known and defined home elsewhere. He never kept his horse or his clothes, his bed or any personal property owned or used by him, on the place. He swore to the contrary to obtain the patent, but, the facts being substantially proved in this case by the government's witnesses, he admits that he had no actual residence on the land and that he kept no personal property on it. His mere thought that what he did was sufficient cannot override the law, which he is presumed to know. The claimant's testimony in this case, and that of Henry Brannan, is in direct conflict with their affidavits made to secure the patent. If the government had been cognizant of the facts, it is not to be presumed that the patent would have been issued. It was obtained by deceiving the government's officers as to the facts. The proof is quite sufficient to clearly establish this. Mills should not be permitted to hold the land, obtained by false affidavits, as against the government.

As found by the court below, there is no question of innocent purchaser in the case. Henry and Thomas H. Brannan, to whom Mills conveyed the land, were fully advised as to the facts proved on the trial. They both knew that Mills did not live on the land at any time,

and that, in fact, he lived elsewhere for the five years immediately following the filing of his claim.

We are of opinion that the complainant is entitled to relief as prayed for.

The decree of the Circuit Court is reversed, and the case remanded for further proceedings conforming to the opinion of this court.