UNITED STATES v. VALLEY LAND & INVESTMENT CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919.)

No. 5122.

1. PUBLIC LANDS ⊙120—CANCELLATION OF PATENT—GOOD FAITH OF ENTRY-MEN—EVIDENCE.

In suit by the United States to cancel defendants' patents to certain lands, evidence *held* not to show that defendant entrymen, at the time of filing upon said lands, entered into an agreement by which the title to their respective pre-emption lands would inure to any other person in whole or in part.

2. PUBLIC LANDS ⊙139—PRE-EMPTION—DISPOSITION BEFORE FINAL PATENT.

The pre-emption statute (Rev. St. § 2262) did not require at time of making final proof, as it does at time of filing, that claimant make an affidavit to the effect that application is not made for the use or benefit of any other person or persons, and claimant had full power to dispose ad interim of his claim upon final issue of patent; the motive of applicant at time of final proof being irrelevant.

3. PUBLIC LANDS ⊙120—CANCELLATION OF PRE-EMPTION PATENT—GROUNDS.

In suit by the United States to cancel defendants' patents to certain lands on the ground that defendant entrymen in their affidavits and proofs falsely represented that lands were for their own exclusive use and benefit, the inquiry of the court could not extend beyond the good faith and truth of the statements required by Rev. St. § 2262, of the entryman at time of making entry.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by the United States against the Valley Land & Investment Company and others. Judgment for defendants, and the United States appeals. Affirmed.

Harry B. Tedrow, U. S. Atty., of Boulder, Colo., and John A. Gordon, Asst. U. S. Atty., of Denver, Colo.

John R. Smith, of Denver, Colo., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. This is an action by the United States, plaintiff, against the Valley Land & Investment Company, a corpora-

tion, Louis E. Kenworthy, Myron L. Meehan, Robert Ryan, Ballentine R. Bohart, Louis W. Stenborn, and Hugh Moreland, defendants, and is a suit in equity, brought for the cancellation of the defendants' patents to certain public lands situated in the state of Colorado.

The cause of action stated by the plaintiff is, in substance, that on and prior to the issue of its patents to the lands referred to in the bill of complaint the plaintiff was the owner thereof, as part of its public domain, and such lands being subject to entry and acquisition under the provisions of the public land laws; that during the year 1913, and on the dates in the bill set out, defendant Kenworthy procured and induced defendants Meehan, Ryan, Bohart, Stenborn, and Moreland each to file in the United States land office for that district a pre-emption declaratory statement, declaring his intention to claim the lands embraced in such statement as a pre-emption right under the public land laws relating to pre-emption claims, and procured them, thereafter, each to file in the said land office an application to purchase the tract described in the said declaratory statement, and also to each file the required affidavits and proofs in support thereof, and to pay the officers at the land office the required fees and purchase price of said land, and procured each of them to otherwise apparently comply with the provisions of said pre-emption laws, and thereby procured the allowance of the entry of said lands and the issue of patents therefor by plaintiff's proper officers.

The date of the filing of said respective pre-emption statements, applications to purchase, allowance of said entries, and the issue of said patents are set forth, and as to the defendant Meehan such dates are as follows: Pre-emption declaratory statement filed May 16, 1913, with the description of the land; allowed by register's final certificate of entry issued January 3, 1914; and patent issued March 30, 1914, conveying title to said land to said Meehan. Similar allegations cover the pre-emption claims patented under the public land laws to the other defendants.

It is further alleged that in said affidavits and proofs so filed in said land office in support of the respective applications of said defendants to purchase, in the respective proceedings in said land office upon which the allowance of said entries were based and the patents issued, each of said entrymen stated, represented, and made to appear, among other things, that said application to purchase said land so embraced in his said pre-emption statement was made by said entryman to appropriate the same to his own exclusive use or benefit, and that he had not directly or indirectly made any agreement or contract in any way or manner with any person or persons whomsoever by which the title to said land which he might acquire from the plaintiff should inure in whole or in part to the benefit of any person except himself.

It is further alleged that by means of said statements, representations, and apparent compliance with the provisions of said laws, relating to pre-emption claims, and not otherwise, said entrymen induced the plaintiff's officers to allow the entry of said lands so applied for and issue final certificates of entry and patents embracing such lands.

It is also alleged that said statements and representations, so made by the entrymen defendants, respectively, were, at all times mentioned in the bill of complaint, false and untrue, and known by the defendants to be false and untrue, in that it was not true that said respective entrymen applied to purchase the lands embraced in said pre-emption statements and applications to purchase, for their own exclusive use and benefit, and in that it was not true that each of said respective entrymen had not directly or indirectly made an agreement with any person or persons whomsoever by which the title to said lands which he might acquire from the United States should inure in whole or in part to the benefit of any person except himself. It is alleged that, on the contrary, at and prior to the time of the filing in the land office by each of the said entrymen of his pre-emption statement, at and prior to the filing in said office by each of said entrymen of his application to purchase the land embraced in said pre-emption statement, and at all the times during said proceedings in said land office, upon which the allowance of each of said entries and the issue of each of said patents was based, in truth and in fact each of said entrymen defendants had an understanding and agreement with said defendant Kenworthy that, when title to said land so applied for had been procured from the United States, a part of said land, to wit, 150 acres thereof, would be by said entryman conveyed to the defendant the Valley Land & Investment Company or to the person or persons designated by defendant Kenworthy, and by reason of the premises plaintiff was defrauded of the title to each and every tract of the lands described in the bill of complaint.

It is thereupon alleged that Meehan now claims to be the owner of the land described in the patent issued to him, a part thereof being subject to a certain mortgage in favor of the defendant the Valley Land & Investment Company, with similar allegations as to the other defendants, with certain differences that are not material.

The plaintiff thereupon prayed that the said patents be cancelled, and that each of the conveyances or instruments based upon said respective entries and patents purporting to effect the title to said lands or any part thereof be cancelled, and that the defendants are and each of them is, without title, claim, or interest in or to said lands or any part thereof; that the plaintiff be decreed the owner of said lands as part of its public domain, free of any claim or incumbrance whatsoever.

Thereupon the defendants answer jointly, in substance admitting that the company defendant is a corporation; that the plaintiff was the owner of the lands mentioned, prior to the issue of patents therefor; that the same were public lands, subject to entry and acquisition only under the provisions of the public land laws, and not otherwise. They further admit that each of the several entrymen named as defendants in the bill of complaint filed in the United States land office for that district the pre-emption declaratory statement referred to in the bill of complaint, and that the register's final certificate of entry was, in due course and upon the dates alleged, allowed, and that patents were duly issued by the United States to the respective defendant entrymen, as alleged in the bill of complaint.

The defendants further admit that the affidavits and proofs filed in the said land office, referred to in the bill of complaint, were of the usual and ordinary form required by plaintiff to be made by entrymen to purchase lands embraced in pre-emption declaratory statements, and contained the usual and ordinary provisions prescribed by law and the rules of the Department of the Interior for final proof, and allege that they were sufficient to entitle the said entrymen and each of them to final certificate of entry, and finally to patent embracing the lands described in the bill of complaint.

The defendants admit that said entrymen, at the time and as a part of said applications to purchase, and upon which said respective patents were issued, made representations with reference to appropriation of the same to their own use, respectively, and that they had not made any agreement or contract with any person or persons by which the title to the lands embraced in said entry would inure to any other person, in whole or in part.

The defendants further admit that by and through such representations and compliances with the provisions of the statute, and the rules and regulations, the defendants took the various steps with reference to said pre-emptions, and allege that neither at the time of filing of their declaratory statements nor at the time of submitting their final proofs had such entrymen, or any of them, made with the defendants or any one else any arrangement, contract, or agreement contrary to or inhibited by any of the rules of the department or plaintiff's public laws.

Defendants specifically deny that they or any of them ever or at all made any contract or agreement with the entrymen or either of them which were fraudulent or unlawful, or which tended wrongfully or illegally to deprive the plaintiff of any of its public lands.

It is thereupon alleged that the defendant the Valley Land & Investment Company, on the 29th day of November, 1912, entered into an agreement in writing with the Sam Farmer Escalante Irrigation Company, whereby the said defendant purchased of said company water rights from its system, estimated to be sufficient for irrigating 1,280 acres of land under the irrigation system of the Sam Farmer Escalante Irrigation Company; that said company was then in the hands of a receiver in an action pending against it, and that in the settlement of said action said company, with funds secured from this defendant company, settled with its creditors and secured the relinquishment of certain lands under its said system, theretofore filed upon and improved by their said creditors, and to induce the Valley Land & Investment Company to purchase its said water rights from this company, to file upon said lands, and to enjoy the benefit of the improvements theretofore made by the former entrymen; that good land, susceptible of irrigation under said system, is limited in area, and the holders of water rights desire the same to be applied to the lands susceptible of irrigation and available under said system, and that this defendant company might thus better assure the application of the said water to the reclamation of said lands this defendant company entered into an agreement with the several entrymen defendants

for the sale of its said water rights, which contract, after formal recitals, and reciting the ownership of this water and that the entryman defendant was desirous of purchasing water rights for lands proposed to be filed on by him under the laws of the United States, recites:

"Now, therefore, it is agreed between the parties hereto that the said first party will, and by these presents does, sell to the second party water rights for the irrigable portion of said lands, to wit, for ———— acres, described above and mentioned to be filed upon by said second party, same being ———— portion of the water rights purchased by said first party from the Sam Farmer Escalante Irrigation Company, said first party reserving the right to substitute the water contract of the new company; that the price to be paid for said water right is $75 per acre, or an aggregate amount of $————, and which said sum and indebtedness is to be evidenced by a collateral note, secured by said water rights on the proportion of said system as aforesaid, and which said note shall be paid upon the making final proof on said land and receiving receiver's receipt therefor, in manner following, to wit: One-half at the time of making final proof and securing receiver's receipt therefor, and one-half in five years, at 6 per cent. interest per annum, secured by trust deed on said lands and water rights."

It was then provided that the second party would forthwith file upon the lands; that he would do all the things required to comply with the laws of the United States with reference thereto; that he would make final proof upon the land, and when final proof was made, and receiver's receipt therefor secured, that he would secure that portion of the purchase price remaining unpaid, as above provided, by the deed of trust and note.

It was provided in said contract, in substance, that if said party of the second part should be unable to pay one-half of the purchase price at the time of making final proof, and if he so elected, he might convey 140 acres of said land and the water right acquired by him from the first party, exclusive of the water right for the 20 acres of said land retained by him, which said conveyance of land and water right to said party or its nominee would be in complete satisfaction and payment of the purchase notes held by the first party; and it was further provided that the second party's selection of his 20 acres of land should be made from the outer boundary of said land and by legal subdivision thereof, and so as to leave the 140 acres in most compact body.

It was further agreed that as further security for the payment of the purchase price of said water right until title should be procured to said land as provided therein, and to insure the further performance of the contract by the party of the second part, as well as any advances made or to be made by any person to aid the carrying out of the provisions of the contract, the second party would execute and deliver to defendant Kenworthy a power of attorney to assure the faithful performance of the contract.

It is then alleged that, after the selection of their several tracts of land for entry by the defendants, they severally purchased from this defendant such water rights, by contract in form as above stated, as were sufficient to irrigate and reclaim the estimated irrigable portion of each of their several tracts and in compliance with the provisions

of said agreement, in the form above referred to, each of said entry-men gave to the defendant Investment Company their collateral notes for the amounts set forth in the pleadings, by which said collateral notes the water rights purchased by each entryman were pledged as security therefor, until said purchase price should be secured by mort-gage upon the lands.

There was also a further agreement set forth in the answer, alleged to have been entered into by each of the defendants Ryan, Bohart, and Stenborn, with the defendant Kenworthy, in substance, that, re-citing the desire of the defendants severally to procure financial aid to develop, improve, and patent said lands, it was agreed, in consider-ation of the advances which should be made by defendant Kenworthy, the same should be repaid upon procuring title or receiver's receipt therefor, together with interest on such sums as should be advanced, or in lieu and in satisfaction of said payment the defendant entryman might convey 10 acres of said land and water rights to the said Ken-worthy, and it was provided that such contract should constitute a lien or mortgage upon said lands and water rights prior to all other liens, save and except the lien or claim of the Valley Land & In-vestment Company for the purchase of the water rights, for the amount of said advances and interest, until said advances were fully paid and discharged, with an immaterial interlineation in the contract of defendant Stenborn; that each of the defendant entrymen executed a power of attorney in favor of the defendant Kenworthy to sign and execute any and all papers and instruments necessary and requisite to fully and effectually carry into effect the provisions of the contract above referred to.

It is then alleged that none of said entrymen elected to convey any of their said land under the provisions of said contract either to the defendant Investment Company or defendant Kenworthy, but that each and every of said defendant entrymen secured the purchase price of their said water rights by a mortgage on their several tracts of land, respectively, after making final proof, and elected to exempt from the lien of said mortgage 20 acres of said lands and water rights.

It is further alleged that the powers of attorney were given only to insure the faithful performance of their several contracts, and that nothing was ever done or attempted to be done under or pursuant to said powers of attorney; that neither of said contracts, agreements, or instruments, jointly or severally, contemplated the alienation of said land by said entrymen or any of them, but that all of said con-tracts and agreements reserved to said entrymen and each of them the full and complete ownership and control of their said several tracts of land, respectively; and that the entry of each of said entry-men was in fact made for his sole use and benefit, and not for the use and benefit of any other person.

It was further alleged by the defendants that they did not have among themselves any other agreement or understanding than that contained and expressed in their said contract above referred to, and had no other understanding or agreement than those, with any other person or persons.

The defendants deny that any affidavits, statements, or representations made by them or either of them in their applications to purchase, or in any of the proceedings in relation to said lands and procuring patents therefor, were false, or that any statements made by said entrymen or any of them were known to be false or fraudulent when the same were made, or at any other time.

It was thereupon admitted that the several defendant entrymen claimed to be and are the owners of the several tracts of land embraced in their several entries. It is further admitted that the defendant the Valley Land & Investment Company has and holds mortgages as mentioned in the plaintiff's bill of complaint, and also that the same and each and all thereof were given for a good and valid consideration and are valid and subsisting liens, and they do not in any manner affect injuriously any of the plaintiff's rights or titles.

Defendants further allege that the only interest which the defendant Louis E. Kenworthy has in said property is by virtue of said agreement hereinbefore set forth for the repayment of advances made to the several defendants by the said Louis E. Kenworthy, the right to the enforcement of which is contained in the terms and provisions of said agreement.

It is thereupon alleged that none of the contracts or agreements were contrary to the rules of the department nor inhibited by the laws of the United States, and that all of the acts of the defendants and each of them in relation to the lands mentioned in plaintiff's bill and all the contracts and agreements made and entered into with the said entrymen were done and made in accordance with and pursuant to the ruling of the Commissioner of the General Land Office and agreeable to the laws of the United States and rulings and findings of the courts in reference thereto; and said acts and doings and said contracts and agreements were done and made by said entrymen, and each and every of them, without any intention of violating the laws of the United States and in the belief that all said acts and doings were authorized by the Department of the Interior and the laws of the United States relating thereto, and upon their denial of all manner of wrongdoing charged in said bill of complaint, prayed that they might be dismissed hence with their costs.

Upon the trial of the issues presented by the pleadings, the allegations of the plaintiff and of the defendants, so far as they refer to the transactions between the defendants that were in writing, were admitted. Judgment was entered in favor of the defendants.

[1] The question presented involves the intent and purpose of the parties to these contracts with reference to the control, ownership, and title of public lands embraced within the pre-emption filings of the several defendants. The real issue was as to the good faith of these entrymen, with their codefendants, and whether or not the entrymen at the time of filing upon said lands entered into an agreement or understanding by which the title to their respective pre-emption lands would inure in whole or in part to any other person.

The first question is: Are the contracts, set forth in the answer, contrary to the provisions of the statutes of the United States, and

are they prohibited either by the spirit or the letter of said statutes? A determination of this issue involves a consideration of the written instruments themselves, independent of the circumstances under which they were executed, under the first assignment of error, to wit:

"The court erred in sustaining defendants' objections to, and in refusing to admit in evidence, the affidavit of nonalienation required of, and filed by each of the entrymen in support and as a part of the pre-emption final proof submitted by each of them on the entries for which the patents in question issued   *   *   *"

—which affidavits involved the good faith provisions of the statute of the United States to the effect that no agreement or contract in any manner or way, with any person or persons whomsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself.

Our judgment is that the trial court did consider this affidavit, and that his holding amounted to a finding that the same was immaterial, rather than that it would not be received, as evidenced by his plain expression with reference thereto in the record, to wit:

"I feel very clear in my own mind that there was no act of fraud on the part of these entrymen, and if this affidavit were admitted it would not change my view in that respect."

Bearing in mind that this affidavit in question was an affidavit required by the rules prescribed by the department and made a part of the final proof, it is interesting to consider what the courts have said with reference to nonalienation statutes applicable to government land. In Adams v. Church, 193 U. S. 510, 24 Sup. Ct. 512, 48 L. Ed. 769, the court was considering the provisions of the Timber Culture Act (Act June 14, 1878, c. 190, 20 Stat. 113), and the rules and regulations promulgated by the Commissioner of the General Land Office, and Justice Day there recites that—

"It appears that Adams made the entry under the Timber Culture Act before the partnership agreement was entered into, and there is nothing in the record to show that, in taking the preliminary oath required by the statute, he acted otherwise than in good faith, and stated the truth as to the situation and his purposes in making the entry. As recited in the title, the purpose of the act is to encourage the growth of timber on the western prairies.   *   *   * Section 2 of the act (20 Stat. 113) requires the person applying for the benefit of the law to make affidavit that he is the head of a family;   *   *   * that the entry is made for the cultivation of timber for the exclusive use and benefit of the applicant; that the application is made in good faith, and not for the purpose of speculation, or directly or indirectly for the use or benefit of any other person or persons whomsoever; that affiant intends to hold and cultivate the land and to comply with the provisions of the act.   *   *   *"

He thereupon recites the provisions of the statute with reference to the time given for the issuance of final certificate and patent and the provisions of his proof that shall entitle him to a patent. The record showed a sale of an interest in this land to another as a partner, before final proof and the contention was that the same was void as against public policy. The court recites:

"It is pointed out that the final affidavit, required by the rules and regulations of the General Land Office made under authority of section 5 of the

act, is to be in the same terms as the preliminary one, and requires the claimant to make oath that his entry was made in good faith, and not for the purpose of speculation or indirectly for the benefit of any other person whomsoever."

It was then argued that the fact that this sale of an interest by the claimant to another, his partner, before final proof, brought the case within the reasoning and the spirit of Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. The court goes on to distinguish between the provisions of the Homestead Law and the Timber Culture Act; that in the case last cited it was held that a court of equity would not grant a decree for specific performance of an agreement to sell the interest of the homesteader made after settlement and before the oath is filed for final certificate; and further stated:

"But the Homestead Act specifically requires that the applicant shall make affidavit before entry is made that it is for the purpose of actual settlement and cultivation, and not directly or indirectly for the use or benefit of any other person. Rev. Stat. § 2290 [Comp. St. § 4531]. Further, the *final proof* [the italics are ours] requires affidavit by the applicant that 'no part of such land has been alienated, except as provided in section 2288' [section 4535]—Rev. Stat. § 2291 [section 4532]—which section limits the right of alienation to 'church, cemetery or school purposes, or for the right of way of railroads.' "

Justice Day thereupon holds that the Anderson Case construes the two provisions of the Homestead Law and states his analysis of the purpose of the Homestead Law, and the necessity for the provision requiring the affidavit at the time of final proof. He then emphasizes the fact that the policy of the government to require such affidavit at the time of final proof, when it intends to make it a condition precedent to granting title, was indicated in the provisions of the homestead act itself, and, further, that it could readily have been pursued by the same provision in the Timber Culture Act, if it was the intent to extend the principle to that statute.

Thereupon, in conformity with the decisions of the Land Department in the cases therein cited, the right of the timber culture entryman to dispose of his holdings, acquired by him in good faith, before final certificate, is fully recognized. It is further held that:

"If the entryman has complied with the statute and made the entry in good faith, in accordance with the terms of the law and the oath required of him upon making such entry, and has done nothing inconsistent with the terms of the law, we find nothing in the fact that, during his term of occupancy, he has agreed to convey an interest to be conveyed after patent issued, which will defeat his claim and forfeit the right acquired by planting the trees and complying with the terms of the law. Had Congress intended such result to follow from the alienation of an interest after entry in good faith it would have so declared in the law. Myers v. Croft, 13 Wall. 291 [20 L. Ed. 562]."

Justice Day thereupon closed the opinion:

"To sustain the contentions of the plaintiff in error would be to incorporate by judicial decision a prohibition against the alienation of an interest in the lands, not found in the statute or required by the policy of the law upon the subject."

[2] A comparison of the Timber Culture Act (20 Stat. 113) and the pre-emption statute (section 2262, Revised Statutes), in so far as

the provisions of the laws refer to the nonalienation affidavit, discloses that they are similar, and that there is not an express provision that such affidavit shall be made at the time of or as a part of the final proof, or that the issuance of a patent shall be dependent upon such facts; while in the Homestead Law, as recited in the above case, it is specifically recited not only that the affidavit shall be made as to the purpose and intent and good faith at the time of the entry, but that it shall also appear by affidavit at the time of final proof and before patent issue. We therefore think it entirely consistent, in an interpretation of the intent and purpose of the Congress in the enactment of the provisions of the pre-emption statute, to apply the same rule that is announced in the case above cited by the Supreme Court of the United States.

In this view of the requirements of this pre-emption statute, the affidavit offered by plaintiff below being an affidavit that was made and filed at the time of the making of the final proof, in compliance with the requirement of the Commissioner, exacting such additional statement at the time of final proof, is invalid. Williamson v. U. S., 207 U. S. 459, 28 Sup. Ct. 176, 52 L. Ed. 278. In this case Justice White, in considering the provisions of the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89 [Comp. St. §§ 4671–4673, 4988, 10216]), said of the necessity for the affidavit required by the rules of the Commissioner to be made and filed as a part of the final proof:

"When the context of the statute is thus brought into view, we are of the opinion that it cannot possibly be held, without making by judicial legislation · a new law, that the statute exacts from the applicant a reiteration, at the final hearing, of the declaration concerning his purpose in acquiring title to the land, since to do so would be to construe the statute as including in the final hearing that which the very terms of the statute manifests were intended to be excluded therefrom."

Adams v. Church, supra, is cited, and the court proceeds to consider whether it was within the power of the Commissioner of the General Land Office, under its construction of this statute, to enact rules and regulations by which an entryman would be compelled, at the final hearing to do that "which the act of Congress * * * excluded," and thereby "to deprive the entryman of a right which the act by necessary implication conferred upon him." It is then held that the concluding portion of section 3 of the Timber and Stone Act (Comp. St. § 4673) provided:

"Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office."

But:

"This power must in the nature of things be construed as authorizing the Commissioner of the General Land Office to adopt rules and regulations for the enforcement of the statute, and cannot be held to have authorized him, by such an exercise of power, to virtually adopt rules and regulations destructive of rights which Congress had conferred"

—and that, as there was no requirement concerning the making in the final proof of an affidavit as to the particulars referred to, he was under no obligation to make such an affidavit, and had full power to

dispose ad interim of his claim, upon the final issue of patent, the motive of such applicant at the time of the final proof was irrelevant.

[3] This, we think, is particularly applicable to the situation here, and therefore the inquiry of the court could not extend beyond the good faith and the truth of the statements in the affidavit required by the provisions of the law of the entryman at the time of making his entry. In this view the trial court did not err in holding that it was not an affidavit required by statute in the making of the final proof, and that it did not relate to the time of the inquiry, limited by the statute to the time of making the entry.

Upon the determination of the first issue upon the strict construction of the written contracts, it was immaterial, and we understand that the court so held. We think, however, that the trial court took the broader view of the duty to determine the question of fraud, upon the ground and for all of the reasons stated, and as a matter of fact did consider the affidavit as one of the acts performed by the defendants with reference to securing the title to said premises, to be given such weight, if any, as the court found it entitled to.

Conceding the right of these defendant entrymen to make contracts with reference to this property after the time of the entry and the filing of the affidavit required by the statute, we think it clear that a reference to the instruments themselves, alone, fails to establish want of good faith or the falsity of the affidavit in the particulars complained of in the bill of complaint.

Even though the contracts themselves are not contrary to the provisions of the law by their express terms, and therefore are not prohibited thereby, is the real intent and purpose of the entrymen and the other defendants revealed by a consideration of all of the facts and circumstances surrounding the making of the pre-emption filings? The manner in which the defendants are shown to have been interested in making the filings; the circumstances of the defendant entrymen; their attitude toward the lands embraced in their respective entries prior to and after patent; their control or lack of control of such lands; their exercising dominion over them, independent of the other defendants; the manner in which the entrymen finally elected to and did settle for the water rights—do all these things, considered with the written contracts themselves, show that these five entrymen defendants were induced by the Investment Company and its president, Kenworthy, to go upon these lands and locate them for the benefit of said company, and therefore that the affidavits of nonalienation were false, and that the patents to the lands were fraudulently obtained?

A determination of the issue thus presented requires a consideration, not only of the written contracts, but also the testimony of the various witnesses produced by the plaintiff in support of its allegation of fraud.

Robert Ryan, one of the defendants, was sworn by the plaintiff, and testified that he was 77 years old, that he made one of the pre-emption filings in question, and when asked to state the circumstances leading up to the making of the filing, he said, in substance, that it

was a simple matter, that he was looking for a chance to locate some land. He met with misfortune, and was looking for something, and heard that Kenworthy had some water rights; that he went to see the latter, and his talk with him was brief. He asked him if there was an opportunity to get some land and was told there was; did not talk much, but asked Kenworthy when he was going, and if he could go along with him, and, when the time came to go, the latter told the witness to be there, and he was there, and they went upon the land. The testimony of this witness was that the defendants Bohart, Moreland, Stenborn, and Meehan went over to the land with lumber belonging to Kenworthy; that he built a house on his claim; that the other four went onto their respective selections, and they stayed upon the land about seven months.

The witness Hugh Moreland, one of the defendant entrymen, testified, in substance, to the same effect, and he stated, with reference to any arrangements with the defendant Kenworthy or the Investment Company:

"Q. Well, did you have any arrangements whatever with Mr. Kenworthy before you went over there? A. What kind of arrangements?

"Q. I want any kind. A. Well, the arrangements were I was to get 10 acres of land with paid-up water right. I was to give him a mortgage on this 150 acres for this water."

We deem it unnecessary to refer to the specific statements of the other witnesses for the defendants, the import of which is consistent with the foregoing, and which in substance recites that these entrymen made their own selections and filed upon the land; that their attitude toward the land was that of owners, and there is no substantial evidence of intent or purpose that the land or any part of it was taken for the benefit of Kenworthy, or the defendant Investment Company. The entrymen controlled the land to the exclusion of any one else; they exercised dominion over it, and went so far as to give option sales to parties other than these defendants Kenworthy and the Investment Company.

The best proof of the intent and purpose of the parties to the transactions, and especially of the defendant entrymen themselves, is the manner in which they finally elected under the contract to and did settle for the water right by giving their notes and mortgages upon the tracts, respectively, reserving to themselves 20 acres, with the water right thereto, from the mortgage.

There is no intent or purpose shown on the part of the defendants Kenworthy or the Investment Company to exercise any control or dominion over the land. There is no testimony that sustains the conclusion that they wanted the land. They had the water to sell, and were looking for purchasers, as they had a right to do. The land of the plaintiff, without water, is practically worthless. The water is the thing of real value. Certainly it is not to the discredit of the entrymen that they were willing to purchase from or to the discredit of the company or its president to be willing to sell the water to these entrymen. That the price was reasonable is shown by the testimony of the different witnesses. That the water was worth what they were agree-

ing to pay for it, or what the defendant company and its president are to have out of it, is conceded. They have a mortgage upon 140 acres of land, and is it to the discredit of the company that it conceded to these indigent entrymen the advantage of 20 acres of land free and the water right therefor free of the lien of the mortgage? Can it be said that there was a fraudulent intent and purpose to give to the defendant company an interest and title to a part of the land in the fact that the entrymen protected themselves against the uncertainty of being able to pay for the water and thus losing the whole of the land, if the mortgage covered it? We think rather that it is to the credit of this water company that it was willing to sell its valuable right to these indigent entrymen and take as their security a mortgage upon the 140 acres and the water right thereto.

It is suggested that the giving of the mortgage to secure the notes, after the final proof, was an attempt to evade the statute, and, taken together with the contracts, shows the original intent of the parties to violate the good-faith and nonalienation provisions of the statute. With this we cannot agree. On the other hand, we think it demonstrates the fairness of the Investment Company and Kenworthy. It emphasizes the right of these entrymen to elect to give no security, but the mortgage, for the entire amount due upon the water contracts. The plain terms of these contracts, with all of the facts and circumstances attending the transactions, including from the first knowledge that the entrymen had that there were lands there upon which they could file, down to the final act of the giving of the note and mortgage to secure the same; all unite in establishing the simple situation of the defendant company and its president, Kenworthy, having water for sale, with a right and a desire to sell the same, and the entryman in a perfectly legitimate, honorable way taking advantage of the opportunity, being treated with the utmost fairness, finally closing the transaction of the purchase of the water right by giving the note and mortgage after final proof—all consistent with his rights as an entryman, and in entire harmony with the provisions of the Preemption Law under which the entry was made.

Finally, the plaintiff insists that there is a conflict in the statements of the different witnesses that cannot be reconciled with the honesty of the transaction. Admitting that inferences might be drawn from some of the evidence, some of the facts and circumstances in the case, that would indicate an intent and purpose to violate this provision of the Pre-emption Law, the position of the trial court becomes especially important. After seeing, personally, the witnesses, observing their demeanor upon the witness stand, having an opportunity to judge of the character and stability of the men, he finds:

"These gentlemen impressed me as honest men, as substantial citizens. * * * The men did not hesitate to tell the whole story—both the entrymen and Mr. Kenworthy. I think it was an honest transaction."

The record discloses substantial evidence to sustain the findings of the trial court, and we find no obvious error in the application of the law or mistake in the consideration of the facts.

The judgment of the trial court is affirmed.